# Commonwealth *ex rel.* Hood *et al. versus* Vandyke *et al.*

1. In an action for a false return of "*nulla bona*," unless it appear that the property pointed out belonged to the defendant in the execution, an offer to indemnify the sheriff will not make him liable.

2. The Interpleader Act of April 10th 1848 is not imperative on the sheriff; but it affords him a means of relieving himself from responsibility. He may take the risk of returning "*nulla bona*" or levying and selling.

3. When there is a claim of property adverse to the defendants which would raise a reasonable doubt as to title, or create a pause in the mind of a constant man, the sheriff has a right to call on the plaintiff for indemnity, and if refused, may ask the court to enlarge the time for his return till indemnity be given.

4. Whether the insufficiency of the indemnity, although it may justify no return, is a defence to an action for false return. *Dubitatur*, per Sharswood, J.

5. A sheriff has a right to require that the sureties in a bond of indemnity to him should reside in his county.

6. Whether the indemnity is reasonable ought not to be too broadly submitted to the jury without instructions, but is within the province of the court, leaving the facts, if disputed, to the jury.

January 31st 1868.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.    STRONG, J., at Nisi Prius.

Error to the Court of Common Pleas of *Northumberland county:* No. 13, to October Term 1867.

This was an action of debt, at the suit of the Commonwealth of Pennsylvania, at the suggestion of Thomas G. Hood and others, trading as Hood & Co., as plaintiffs, against James Vandyke, sheriff of Northumberland county, and others, his sureties, on his official bond.    The writ was issued to November Term, 1860.

Hood & Co. on the 5th of August 1859 recovered two judgments against Zimmerman & Pursel, one for $436.39, and the other for $437.07; on these judgments executions were issued No. 2 and 3 to August Term 1860; they were received by the sheriff April 3d 1860; he returned to both, "Nullâ bona as to Zimmerman & Pursel, and I have been requested by the plaintiffs' attorney in this case to levy upon and sell certain personal property in possession of Jeremiah H. Zimmerman, who says that he is agent for Stroh & Elliott, and that the property belongs to them; and the said Stroh & Elliott, by their attorney J. B. Packer, Esq., had notified me in writing that they claimed and owned said property, and have forbidden me to levy upon the same, which I have refused to do for want of sufficient indemnification from the plaintiffs, which has been repeatedly asked from their attorney, John Porter, Esq., and refused, although he has given me a bond of indemnity executed by citizens of Philadelphia, endorsed by himself, which I considered insufficient, and

[Commonwealth v. Vandyke.]

of which I gave him notice, in the presence of Bartrim Galbraith, on or about the 1st day of June last, and no further or better bail has since been given."

The declaration in the case was not given in the paper-books, but the breach assigned appeared to be not levying on and selling as the property of the defendants, the goods mentioned in the return.

After having given in evidence the above judgments, executions and returns, the plaintiffs gave evidence by the testimony of J. Porter, Esq., his attorney, that shortly after the executions were placed in the sheriff's hands, he, Mr. Porter, gave him a list of the property to be levied on, which included a coal lease from one Dewart to Zimmerman & Pursel; that the sheriff having refused to proceed unless he was indemnified, a bond of indemnity in $7000, executed by Hood and others, residents of Philadelphia, was given to him; that about ten days afterwards, the sheriff not having proceeded on the writs, the sheriff gave to Porter as the reason for the delay, that the obligors in the bond all lived out of the county, but added, that if Porter would endorse the bond he would proceed to sell; and that the bond was endorsed as requested.

There was undisputed evidence that the obligors in the bond were worth $250,000. There was evidence on both sides as to the ability of Mr. Porter. The property mentioned in the list was sufficient to satisfy the executions.

The plaintiffs having rested, the defendants offered in evidence a number of executions to January Term 1859, issued by Gray, Stroh & Elliott, E. Y. Bright and others, against Zimmerman & Pursel. The evidence was to show that the property spoken of by Mr. Porter had been previously sold under these executions, and that it all belonged to Stroh & Elliott. The court admitted the evidence against the objection of the plaintiffs, and sealed a bill of exceptions.

The property was bought at the sheriff's sale by Stroh & Elliott and Bright. The coal lease was for ten years, but had not been levied on by the sheriff under the prior executions; but it was sold by the sheriff to Bright, and there was evidence that it had been surrendered to Dewart, the lessor. The allegation of the plaintiffs in this case was, that the purchase of the property at the first sheriff's sale had been under a prior arrangement between the execution-creditors and the defendants for the benefit of the latter, and that it was fraudulent. Much evidence was given on this point on both sides.

The plaintiffs' points, and the answers of the court, were as follows :—

1. If the jury believe that the property of Zimmerman & Pursel was bid off at the sheriff's sale in 1859, by E. Y. Bright, and

[Commonwealth *v.* Vandyke.]

Stroh & Elliott, or either of them, under an arrangement between them and Zimmerman & Pursel, that bidders should be discouraged from bidding at the sales, and that the property should be bid off by Bright and Stroh & Elliott, at as low prices as the same could be obtained, and the property so bought to be held by these purchasers until their debts against Zimmerman & Pursel should be paid and their liabilities for them satisfied: such an arrangement was fraudulent, and any judgment-creditor of Zimmerman & Pursel, who did not participate in the fraud, had a right to issue execution and levy upon the property bought at said sale, under the arrangement aforesaid.

Answer: "Upon the facts as stated in this point, the law would be as stated. But if the facts are that Stroh & Elliott and Bright, who purchased the property at sheriff's sale, on the 25th of January 1859, purchased for themselves, and paid for it, and took possession of it, with an arrangement or understanding, that if Pursel & Zimmerman afterwards paid the amount of their indebtedness to Stroh & Elliott and Bright, and the amount for which they were bail for them, such purchase would not be fraudulent. To avoid the title of a purchaser at sheriff's sale, it is necessary to show he was guilty of some deception. When one is buying for himself, but falsely declares that his purchase shall enure to the benefit of the debtor, or his family, and this is done as a mere trick to prevent competition, and thus get the property at an under-price, he acquires no title. But to say that he intends to give it to the debtor, or let him redeem it, when such is really his intention, is no fraud."

2. It was not necessary that the bail in the indemnity bond to sheriff Vandyke should reside in the county of Northumberland. If the obligors were men of property and of sufficient ability, the bond is good, and the sheriff was bound so to consider it, though they resided in the city of Philadelphia.

Answer: "The court do not assent to this proposition. We think the sheriff should not be compelled to go to a remote part of the state, to pursue the individuals in a bond of indemnity, but had a right to require that the bail should reside in the county. Bail was given in the county. Mr. Porter guarantied the bond, with which at the time the sheriff appeared to be satisfied, and agreed to accept. Was Mr. Porter sufficient? If he was, the sheriff should have proceeded, and if he did not, he will be liable, if the property belonged to Zimmerman & Pursel at the time he received the Hood executions, or to the amount or value of any property not levied on and sold in January 1859."

3. It was the duty of James Vandyke, the sheriff, when indemnified by plaintiffs, to levy and sell on plaintiffs' executions, the goods in possession of Jeremiah Zimmerman and John P. Pursel, or either of them, when requested, though they may have been

[Commonwealth v. Vandyke.]

claimed by others, or to apply for the Interpleader Act of the 10th of April 1848, and having refused so to do, rendered him and his bail liable on the official bond.

Answer: "It was the duty of sheriff Vandyke, when properly indemnified by the plaintiffs in the executions that were put into his hands, to levy on the personal property of Zimmerman & Pursel, or either of them, when requested, though the property was claimed by others, and on refusal to do so, he and his bail would be liable; but the court do not think he was obliged to apply under the Interpleader Act."

4. It is not for the sheriff to set himself up as judge, as to who is the owner of the property, when ordered to proceed to levy and sell, and furnished with sufficient indemnity. But it is his duty to proceed and sell under the executions in his hands when so indemnified.

Answer: "Affirmed."

5. There is no evidence that the term under the lease from William L. Dewart, or under that from the borough of Sunbury, was sold by or from Zimmerman & Pursel, but the same remained their property when levied upon in 1860, under the plaintiffs' executions.

Answer: "There is no evidence that the term under the lease from William L. Dewart to Zimmerman & Pursel was levied upon by the sheriff; but there is evidence that it was sold—but such sale would be void for want of a levy. The wharf at river bank was levied on and sold in 1859. The coal lease remained their property, unless it was given up by Pursel & Zimmerman."

6. Under the evidence in this cause the plaintiffs are entitled to recover.

Answer: "Refused."

The verdict was for the defendants.—The plaintiffs took a writ of error. The specifications of error were the admission of the evidence contained in the bill of exceptions and the answers of the court to their points.

*G. F. Miller*, for plaintiffs in error, cited Waldron v. Haupt, 2 P. F. Smith 411; Martin v. Mathiot, 14 S. & R. 214; Rose v. Story, 1 Barr 190; Sheriff's Interpleader Act, April 10th 1848, § 9, Purd. 437, pl. 44, Pamph. L. 450; Connelly v. Walker, 9 Wright 449; Dorrance v. Commonwealth, 1 Harris 160; Commonwealth v. Contner, 6 Id. 439.

*W. M. Rockafeller*, for defendants in error, cited Commonwealth v. Watmough, 6 Whart. 117; Hamner v. Griffith, 1 Grant 193; Connelly v. Walker, 9 Wright 449; Dick v. Cooper, 12 Harris 220; Rose v. Story, 1 Barr 190.

[Commonwealth *v.* Vandyke.]

The opinion of the court was delivered, February 6th 1868, by
SHARSWOOD, J.—It may certainly be considered as settled by
the case of Commonwealth *v.* Watmough, 6 Whart. 117, that in
an action against the sheriff for a false return of nulla bona to a
writ of fieri facias, unless it appears that the property pointed
out by the plaintiff actually belonged to the defendant in the
execution, an offer to indemnify him will not make him liable in
damages.    This decision is not in the least shaken by Connelly
*v.* Walker, 9 Wright 449; for although Woodward, C. J., in that
case animadverted severely and justly on the conduct of the
sheriff in making return to the writ that the property was claimed
by certain persons who had given bond, which plainly was no legal
return, yet it was not denied that the sheriff could show title in
those persons, and the court proceeded to examine the questions
arising upon that title.    Nor does the Act of April 10th 1848,
Pamph. L. 450, providing for an interpleader, vary the liabilities
of the sheriff.    That act is not imperative upon him, but affords
him a means, by application to the court from which the execu-
tion issued, to relieve himself from responsibility.    He may take
the risk of returning nulla bona, or of proceeding to levy and
sell, if he sees fit.    In the case before us, the sheriff had before
made a sale of the very goods, upon which he was directed to
levy, on executions by other parties against the same defendants.
We cannot enter into his motives in neglecting to avail himself
of the provisions of the Interpleader Act, made for his protection
and security.    The question of the validity of the title of the
purchasers at that first sale was fully gone into and decided on
the trial in this case.    It was attacked as colorable, fraudulent
and void as against creditors, and was left to the jury under
instructions from the court, in which we can perceive no error.
In regard to the coal lease, which was not levied on and did not
pass by the sale, it was also fairly submitted to the jury to say
whether it had not been surrendered to the landlord before the
time when the executions were placed in the hands of the sheriff.

But there was another question in the cause, and another part
of the charge under which the jury may have found their verdict,
even if they were of opinion that the sale was fraudulent, or that
the purchasers were mere trustees for the original defendants.
This arises under the answer of the court to the 2d point of the
plaintiffs.    They had tendered to the sheriff their bond of indem-
nity with sureties resident in the city of Philadelphia, of whose
sufficiency evidence was given.    The court said: "We think the
sheriff should not be compelled to go to a remote part of the state
to pursue the individuals in a bond of indemnity, but had a right
to require that the bail should reside in the county."    Whether
this answer was right is a question which arises directly and ne-
cessarily on this record.    It is undisputed that wherever there is

[Commonwealth v. Vandyke.]

a claim of property adverse to that of the defendant in the execution, of that kind which would reasonably raise a doubt or apprehension as to the title, or create a pause in the mind of a constant man, the sheriff has a right to call on the plaintiff for a reasonable indemnity : Spangler v. The Commonwealth, 16 S. & R. 68.   If the plaintiff refuses to respond to this call, the sheriff may apply to the court to enlarge the time to make his return until such indemnity is given : Nagle v. Stroh, 4 Watts 124.   The court to which such application is made would seem to be the proper tribunal to judge of the sufficiency of the indemnity, and that the proper time—not the jury long afterwards, in an action against the sheriff for a false return.   Indeed, I may be allowed to express for myself a doubt whether, in such action, the insufficiency of the indemnity offered is any defence.   I cannot comprehend how it can justify a false return, though it may and no doubt does justify no return at all—but that is to be shown to the court in answer to a rule upon him to return his writ.   The plaintiffs in error, however, raised no such question in the court below. They were willing and submitted to go to the jury upon the sufficiency of the indemnity.   Were the court wrong in their answer to the plaintiff's point ?   We are of opinion that they were not. The sheriff is an officer whose duty is not only to execute all writs and process, but he is also the principal conservator of the peace within his bailiwick.   This function of his office demands his constant presence in the county.   To require him, therefore, to go elsewhere to make the necessary inquiries as to the sufficiency of sureties, is to require him to neglect his other important duties to the public.   It would be unsafe for him in many instances to act upon the ex parte evidence submitted to him by the plaintiff.   He ought to have the opportunity of a free and impartial examination.   It is no answer to say that he may delegate the business to others.   In a matter which may involve him in very heavy loss, he has a right to be personally satisfied.   There are many cases to which the principle will apply when he has no interpleader to resort to for his relief—as in replevin and property bonds.   Besides which, if an action should afterwards have to be brought on the indemnity, it would become necessary for him to be absent from his office and duties frequently and for long periods—his witnesses must attend at a remote place—his cause must be tried before a jury of strangers—and all the inconveniences and perils attending a lawsuit at a distance from his home would have to be encountered.   Whether it is in an adjoining or a distant county— in a sister state or a foreign country, can make no difference. Whether the indemnity tendered is reasonable ought not to be broadly submitted to the determination of a jury without instructions ; but like other questions of a similar character, is within the province of the court, leaving the facts, if in dispute, to the jury.

[Commonwealth *v.* Vandyke.]

On the whole, we see no error on this record of which the plaintiffs have any right to complain.

Judgment affirmed.