## Commonwealth v. Delatore

*Dennis M. Makel, assistant district attorney,* for the Commonwealth.
*George K. Hanna,* for defendant.

BELL, *J.,* January 28, 1991—This case is before the court on defendant's motion to dismiss the charges against him. More specifically, defendant is requesting the court to dismiss the charges alleging that neither the sheriff nor his deputies possess general police powers or legal authority to make an arrest.

Upon consideration of the transcript of the preliminary hearing in the above captioned case, the briefs and arguments of counsel, the court makes the following findings of fact.*

The newly constructed Star Lake Amphitheater is located in the rural area of Hanover Township, Washington County, Pennsylvania. Star Lake presents shows and concerts for the general public

---

* The attorneys for the Commonwealth and the defense stipulated as to the facts and the matters contained in the transcript of the preliminary hearing held on July 24, 1990.

516

and has a seating capacity of approximately 25,000. Hanover Township has a police force of five part-time police officers.

Star Lake employed full-time security personnel and also entered into an agreement with the Washington County Sheriff's Department that the sheriff and his deputies would provide additional personnel to handle traffic, crowd control, security, etc. Washington County provided a sheriff's vehicle or vehicles to assist in the above.

A letter was written on June 4, 1990, by Chief Deputy Sheriff Ferdal Littleton to management of Star Lake outlining the terms of the sheriff's/deputies' duties and financial arrangements. (See exh. 1.) Basically, the letter states the Washington County Sheriff would provide security and traffic control to Star Lake at $10 per hour per man; workmen's compensation and general liability insurance on all persons working concert events would be the responsibility of Star Lake. Payment of wages for deputies assigned to Star Lake shall be paid by Star Lake directly to them.

On July 4, 1990, Star Lake conducted a concert/show and Washington County deputy sheriffs were on duty as outlined above. Washington County deputy sheriffs Carl Pitzarella and David Richards were in the security office/trailer located on the premises of Star Lake. The deputies heard screaming emanating from outside the trailer but in the public area of the amphitheater. Deputy Pitzarella stepped outside the doorway and observed defendant Ronald Delatore screaming loudly and using boisterous, vulgar language. Deputy Pitzarella told defendant "to settle down." Defendant ignored him and Pitzarella again requested defendant to calm down; however, defendant continued to be loud, boisterous and used vulgar language in the public area. Deputy Pitzarella then notified defendant he

was under arrest for disorderly conduct and told him to go inside the security office, where the deputy would issue a citation. Defendant settled down and consented. Once inside the security office, defendant let out a scream and punched Deputy Pitzarella in the face, knocking him down.

Pitzarella suffered a broken nose and an injury to his eye. The above incident was witnessed by Deputy Richards who, along with other security personnel present, subdued defendant. Deputy Richards then arrested defendant and filed charges of aggravated assault, simple assault, resisting arrest and disorderly conduct.

We also note that deputies Pitzarella and Richards were dressed in Washington County Deputy Sheriff uniforms, exhibiting badges and side arms, all clear indicia of their official position.

Defendant argues that the deputies had neither general nor specific statutory authority to make an arrest in the case at bar. Further, defendant alleges that the Washington County Sheriff's Department illegally contracted with Star Lake Amphitheater to provide security services; (i.e. they were committing a criminal act by their employment at Star Lake in violation of 16 P.S. §1210 et. seq.). Section 1210 states:

"No sheriff, deputy sheriff . . . shall perform directly or indirectly, any official services or official duties for any person, association, or cooperation, or receive directly or indirectly any compensation . . . from any . . . corporation during the period of their official services."

First, we address the issue of the sheriff's "arrest" authority. Our research reveals no statutory or appellate case law directly on point as to the general arrest powers of the sheriffs and their deputies in the various counties of the Commonwealth of Pennsylvania.

Consequently, we are left with the historical background of the sheriff and his function at common law.

Over 900 years ago the office of sheriff was created in England with its main function or purpose to see that the king's laws were strictly enforced and adhered to by his subjects and to act as the principal conservators of the peace within their bailiwicks.

Granted, over the years and centuries, the duties of the sheriff changed but the office continued to maintain considerable authority as the enforcement arm of the English courts.

In the early 1600s when English immigrants arrived and settled in Pennsylvania they brought with them the English concept of the office of sheriff which included all those duties which English common law mandated and, more particularly, keeping the peace in the counties (bailiwicks) they served.

In Pennsylvania, the office of sheriff was constitutionally established in 1776 with the adoption of Pennsylvania's first Constitution but, unfortunately, this document did not specify or provide a description of the duties or powers of the office. Our present Constitution, which was adopted in 1968, again failed to specify with particularity the duties and powers of the sheriffs in the Commonwealth.

Our research failed to uncover any statutory authority granting or denying the sheriff the power to arrest. Title 16 P.S. §1216 states that a sheriff or his deputies "shall perform all those duties authorized or imposed on them by statute." Further, we find in Title 42 Pa.C.S. §2921 that "the sheriff, either personally or by his deputy, shall serve, process and execute orders directed to him pursuant to law."

Turning to case law in Pennsylvania, we find the sheriff described by the courts in various ways including "the principal conservator of the peace

within his bailiwick," *Commonwealth v. Vandyke*, 57 Pa. 34, 39 (1868); "keeper of the peace . . . in the county," *In Charge to Grand Jury of Venango County*, 23 Pa. C. 667 (1900).

In 1974, we find the Commonwealth Court in *Venneri v. County of Allegheny*, 12 Pa. Commw. 517, 316 A.2d 120 (1974), quoting, with approval, *Vandyke, supra*. "[The] sheriff in this Common-wealth has been described as 'the principal conservator of the peace within his bailiwick.'" Also, we see in *Miller v. Klunk*, 15 D.&C. 3d 599, 601-02 (1980), "sheriffs, within the scope of their respective jurisdictions, are given power, and have the duty, to preserve the peace . . ."

Based upon the above, the court concludes that the office of sheriff in the Commonwealth of Pennsylvania serves two purposes: One, to serve as an arm of the courts, i.e., serving process, enforcing court orders, escorting prisoners, providing protection and security to the courts and its personnel; two, the sheriffs are the keeper or conservator of the public peace and order in their respective bailiwicks or counties.

It is obvious that in order to carry out the duty of maintaining the public peace and order, it is necessary that the sheriff have arrest powers to take into custody those individuals who disrupt the public peace and order in his presence. As pointed out in the Armstrong County case of *Commonwealth v. Leet*, 6 D.&C. 4th 97, 98 (1988):

"[T]here can be little doubt that the sheriff and his deputies retain their historic powers as peace officers, that is, the power to stop and/or arrest where breaches of the public peace or public order occur in the presence of such officers. . ."

With respect to the case now before this court, we find for the aforementioned reasons, that the Washington County sheriff's deputies had the legal au-

thority to arrest and charge defendant Delatore. Defendant, by his conduct, was committing a breach of the peace in the presence of the deputies in a public area (Star Lake), i.e., being loud, boisterous, and using vulgar language, and then assaulting Deputy Pitzarella causing serious injury to his person which generated the felony charge of aggravated assault.

It would be illogical to rule that a sheriff or his deputies could witness a breach of the public peace and be a victim of a criminal act and not have the authority to arrest for such conduct in order to preserve the peace. A logical analysis would conclude that it would be impossible for a sheriff to perform his present day functions in situations as the facts of the case reveal without any enforcement authority.

This court, by its decision today, does not decide the broader issue of a sheriff's general police powers or arrest authority with respect to motor vehicle violations, investigations of crimes, etc.

This ruling concerns only the sheriff's authority to arrest for breach of the public peace and order committed in his or his deputies' presence.

Defendant's second argument that the sheriff's office was in violation of 16 P.S. §1210 by their employment at Star Lake is simply irrelevant to the case at bar. Whether or not the sheriff department's contractual arrangement at Star Lake was in compliance with section 1210 has no bearing on defendant's arrest for alleged commission of breaches of the public peace.

The sheriff's contractual arrangement with Star Lake, its legality, its compliance with pertinent statutory authority, etc. is a separate and distinct matter from the issue at bar.

Even if we were to assume that the sheriff's department's contract to provide security services

at Star Lake is in violation of section 1210, the sheriff or his deputies were on the scene and once on the scene, had certain inherit powers as outlined above. It is the court's opinion that regardless of the genesis of the deputies' presence at Star Lake, the sheriff and his deputies are on "call/duty" to perform their services of keeping the public peace 24 hours a day, seven days a week in their respective counties.

For the aforestated reasons, defendant's motion to dismiss is denied.

### ORDER

And now, January 28, 1991, after a hearing and upon consideration of the testimony, evidence and arguments of counsel, defendant's motion to dismiss is denied.