Anthony D. Venneri, Arthur Belotti, Stephen Korol, Leo Campbell, Marion Tucker, Robert Thompson and Raymond Goga, Appellants, v. The County of Allegheny, Leonard C. Staisey, Thomas J. Foerster, William R. Hunt, M.D. and Eugene Coon, Appellees.

Argued November 9, 1973, before Judges KRAMER, WILKINSON, JR. and BLATT, sitting as a panel of three.

*Ronald P. Koerner,* with him *Gatz, Cohen, Segal & Koerner,* for appellants.

*Thomas H. M. Hough,* Special Labor Counsel, with him *John J. Hickton, Francis A. Barry,* County Solicitor, and *Henry W. Ewalt,* Labor Counsel, and Assistant County Solicitor, for appellees.

OPINION BY JUDGE KRAMER, March 14, 1974:

This is an appeal filed by Anthony D. Venneri, Arthur Belotti, Stephen Korol, Leo Campbell, Marion

Tucker, Robert Thompson and Raymond Goga (appellants) from an order of the Court of Common Pleas of Allegheny County dated December 7, 1972, in effect dismissing the appellants' complaint in mandamus against the County of Allegheny, Leonard C. Staisey, Thomas J. Foerster, William R. Hunt, M.D. and Eugene Coon (appellees).

This case had its genesis on January 20, 1971, when appellants, all being duly appointed deputy sheriffs of the County of Allegheny, notified the appellees in writing of their desire to engage in collective bargaining under the Act of June 24, 1968, P. L. 237, No. 111, 43 P.S. §217.1 et seq. (hereinafter referred to as Act 111). The appellees refused to so bargain, and on March 19, 1971, the appellants notified the appellees of their intention to file for compulsory and binding arbitration under Act 111. Thereafter, on April 12, 1971, appellants filed a complaint in mandamus seeking a judgment which would command the appellees to appoint an arbiter in compliance with Section 4 of Act 111, 43 P.S. §217.4. One of the appellees, namely the Sheriff, filed an answer, in effect, admitting that his deputy sheriffs were policemen within the meaning of Act 111. The remaining appellees filed preliminary objections denying that the appellants were policemen within the terms of that act.

After hearing oral argument, a judge of the Court of Common Pleas of Allegheny County rendered an opinion and order wherein the court took judicial notice that the appellants were policemen and granted summary judgment ordering the appellees to binding arbitration under Act 111. Upon appeal to this Court, we vacated that order and remanded the case back to the Court of Common Pleas of Allegheny County for the development of an evidentiary record. *See Venneri v. County of Allegheny,* 5 Pa. Commonwealth Ct. 105, 289 A. 2d 523 (1972).

Thereafter the remaining appellees filed an answer, and a full evidentiary hearing was held before a second judge of the court below. Thereafter, a second opinion and order were filed on December 7, 1972, holding that the appellants and all deputy sheriffs of the County of Allegheny were not policemen within the intent and meaning of Act 111. The complaint was dismissed and this appeal was taken.

The sole issue presented on appeal is whether the deputy sheriffs of Allegheny County are "policemen" within the meaning of Act 111.

In an action in mandamus, our scope of review is to determine whether the court below abused its discretion or committed an error of law. Initially, it is of some import to note that this case was remanded to the court below for the specific purpose of making findings with respect to the duties of deputy sheriffs in Allegheny County. Therefore, we need only determine whether there is sufficient evidence to support the court's finding that such deputy sheriffs are not policemen. We are not permitted to substitute our findings for those made by the court below and we may not reverse the lower court unless there is a clear abuse of discretion. See *Porter v. Bloomsburg State College*, 450 Pa. 375, 301 A. 2d 621 (1973) ; *Verratti v. Ridley Township*, 416 Pa. 242, 206 A. 2d 13 (1965). All parties are in agreement that the final resolution of the question of whether such deputy sheriffs are in fact policemen resolves the question of law presented, i.e., whether such deputy sheriffs come within the purview of Act 111.

Anyone familiar with the development of public employes' collective bargaining rights in this Commonwealth realizes that prior to 1947, public employes were prohibited from engaging in strikes against their public employers. Furthermore, there were no statutory provisions for collective bargaining with respect to public

employes. The Act of June 30, 1947, P. L. 1183, as amended, 43 P.S. §215.1 (commonly referred to as the Anti-Strike Act), provided some statutory redress for grievances through the creation of conciliation panels. The award of the conciliation panel, however, was not binding upon the public employer. In *Erie Firefighters Local No. 293 v. Gardner,* 406 Pa. 395, 178 A. 2d 691 (1962), our Supreme Court held that such arbitration awards were not binding upon a public employer, and that even if such provisions were made binding by statute, they would be in violation of Article III, Section 20[1] of the Pennsylvania Constitution. Thereafter, the Constitution was amended on November 7, 1967, so that Article III, Section 31 presently reads: "The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever. Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Common-

---

[1] The case cited dealt with Article III, Section 20 of the Pennsylvania Constitution. Article III, Section 20 was renumbered Article III, Section 31 in 1967.

wealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings."

Pursuant to this constitutional amendment, Act 111 was passed by the Legislature. The first section of Act 111, 43 P.S. §217.1 reads: "Policemen or firemen employed by a political subdivision of the Commonwealth . . . shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act." Nowhere in the Act is the term "policemen" specifically defined, nor is there any reference whatsoever to "deputy sheriffs." In upholding the constitutionality of Act 111, our Supreme Court in *Harney v. Russo*, 435 Pa. 183, 255 A. 2d 560 (1969), noted that the panels or commissions provided for under Article III, Section 31 must adhere to the mandates of the enabling legislation.

In order to round out the public employes collective bargaining picture, we must refer to the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, No. 195, 43 P.S. §1101.101 et seq. (hereinafter referred to as Act 195). Act 195, by its terms, obviously was intended to cover all other public employes within the Commonwealth. Generally speaking, Act 195 is similar to Act 111. There are, however, two notable exceptions: (1) Act 195 generally does not provide for compulsory and binding arbitration, and (2) it does permit limited strikes under certain circumstances. Section 805 of Act 195, 43 P.S. §1101.805, however, creates an exception to the general provisions of Act 195 and is relevant to this Opinion. That section reads: "Notwithstanding

any other provisions of this act where representatives of units of guards at prisons or mental hospitals *or units of employes directly involved with and necessary to the functioning of the courts* of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only." (Emphasis added.)

In this case, the appellants contend that they are policemen under Act 111 and this contention is admitted in the answer of the Sheriff-appellee. The remaining appellees, however, contend that deputy sheriffs are court-related employes and therefore subject to Act 195. As already indicated, the court below agreed with the remaining appellees (the County Commissioners).

The court below, in its opinion, delved deeply into the historical development of the sheriff's office, noting that the office antedates the Magna Carta. The lower court pointed out that a sheriff in this Commonwealth has been described as "the principal conservator of the peace within his bailiwick." *See Commonwealth v. Vandyke,* 57 Pa. 34, 39 (1868); *Commonwealth v. Martin,* 7 Pa. Dist. Rep. 219, 224-225 (1898); *Charge to Grand Jury of Venango County,* 23 Pa. C. C. 667, 668 (1900).[2]

---

[2] The sheriff's power at early common law was indeed formidable, but it is not tenable to carry over such a broad base of authority in the present law. As the lower court in this case noted: "At very early common law the sheriff, possessor of very substantial judicial and law enforcement powers, was indeed a redoubtable figure. He appears to have been a combination judge and law enforcement officer. This supreme power, however, began to erode and as was noted by Pollock and Maitland [The History of English Law 534 (1923)]: 'Already before the beginning of the thirteenth century

The record discloses that prior to the present sheriff's tenure of office, the operation of the sheriff's office was almost entirely related to court activities. The present sheriff has changed the scope of direction and operation of his office so as to include broader police work. There are 102 deputy sheriffs in Allegheny County. The office is regimented in the traditional military-police method of command. The deputy sheriffs wear uniforms, carry sidearms, and are required to attend police training courses. Under the present sheriff's direction, the deputy sheriffs are even involved in plainclothes investigatory work whereby they have made hundreds of arrests for burglary, blackmail, extortion, gambling, and narcotics criminal violations. By private contract, the deputy sheriffs provide protection for the operators and riders of the County's public authority transportation system. There can be no doubt that all of this evidence points to present activities by deputy sheriffs which are within the realm of authority and power of policemen.

Nonetheless, the record also discloses that the deputy sheriffs' *primary duties* are directly related to the operation of the courts in Allegheny County. Deputy sheriffs are daily assigned duties in all of the divisions of the Common Pleas Court. Many of their duties may be considered dangerous. They escort prisoners, keep order, protect judges, serve notice on litigants, provide security in the courthouse, carry out orders and warrants issued by judges, enforce injunctions and perform "other duties as may be assigned by the court."

the sheriff is losing some of his powers; before the end we see the first germs of an institution which is destined to grow at his expense, the knights assigned to keep the peace of the county whose successors will be the justices of the peace.' The encroachment of burgeoning institutions, e.g., coroners, itinerant judges, and municipal law enforcement agencies, diminished the importance of this office," 121 P.L.J. 366, 367-368 (1972).

The sheriff, although a defendant in this case, understandably testified as a plaintiff's witness in support of his deputies. He stated that he has the sole authority to hire and fire. He alone establishes and administers any examination for the employment of deputy sheriffs. He alone sets the standards upon which it is determined who may be hired. The deputy sheriffs do not have any civil service protection. Under the current sheriff, the deputy sheriffs have become county employes, as distinguished from employes of the sheriff's office, i.e., paid out of fees collected by the sheriff's office which was the prior practice. The sheriff described how he realigned his department so that those employes who perform purely clerical functions were not classified as deputy sheriffs. The sheriff made it quite clear that he does not run the sheriff's office as did his predecessors, and that by comparison he runs his office "much as a police department." He also emphasized that he receives no directives whatsoever from the County Commissioners and that he reports to no other elected official. His statement was that he reports "to the public." Interestingly enough, however, the record permits one to conclude that all of the witnesses acknowledged that the deputy sheriffs are under a duty to carry out any authorized directive or order of a judge of the Court of Common Pleas of Allegheny County.

Appellants offer little support (statutory or otherwise), save for the empirical evidence that at present the sheriff's office is run "much as a police department," for their proposition that they are in fact policemen. Due to the gravity of the question before us, we have endeavored to make an extensive, if not exhaustive, search of the relevant law. Initially, we note that Article IX, Section 4, of the Pennsylvania Constitution of 1968, mentions the sheriff as a county officer. The Constitution, however, does not spell out the sheriff's

duties, and we have searched in vain for any recent Pennsylvania appellate court decision which outlines or defines the authority, powers and duties of the sheriff. There can be no question but that the Pennsylvania Rules of Civil Procedure outline certain duties of the sheriff, but these are all court-related.

The Second Class County Code (SCCC), Act of July 28, 1953, P. L. 723, as amended, 16 P.S. §3101 et seq., makes numerous references to the sheriff and his deputies. Section 401 of SCCC, 16 P.S. §3401, lists the sheriff as an elected official. Section 1201 of SCCC, 16 P.S. §4201, directs an outgoing sheriff to turn over all unfinished business to his successor, and directs the successor to finish said business. The only references in this section are court-related. Several sections of SCCC deal with the appointment or qualifications of deputies. *See* 16 P.S. §§4202-4209. SCCC empowers the sheriff to hire a solicitor. *See* 16 P.S. §4213. Section 1214 of SCCC provides for the sheriffs to assume the duties of the coroner in the event of a vacancy in that office. None of the provisions of SCCC give a general description of the sheriff's (or his deputies) duties. It is even more important to note that none of the references to his official duties found in SCCC pertain to general police work or criminal investigation.

The appellants point to Section 1210 of SCCC, 16 P.S. §4210 (*see also* 16 P.S. §4211) as support for the contention that they are police officers. Section 1210 reads in part: "(a) No sheriff, deputy sheriff, detective or other county police officer whatsoever shall perform, directly or indirectly, any official services or official duties for any person, association or corporation. . . ." We do not believe that this section of the statute indicates a legislative intent to define deputy sheriffs as county police officers. When the Legislature has chosen to vest a given group with policeman powers and duties,

it has done so with a fair degree of specificity. Section 1501 of SCCC, 16 P.S. §4501, provides for a separate county police force and clothes said force with general police power and authority. Even more damaging to appellants' argument is the fact that the Legislature has permitted second class counties to appoint (through the district attorney) county detectives described by the Legislature as "general police officers" with general investigatory powers in criminal cases.[3] *See* Sections 1440, 1441 of SCCC, 16 P.S. §§4440, 4441.

While our search of the statutory law has revealed several acts which give the sheriff and his deputies specific powers,[4] it has turned up more acts which specifically grant general police powers to policemen within

---

[3] In *Hartshorn v. County of Allegheny*, 9 Pa. Commonwealth Ct. 132, 304 A. 2d 716 (1973), we affirmed the Common Pleas Court of Allegheny County which held that the county detectives of the district attorney were policemen within the meaning of Act 111 because almost all of their responsibilities involve the execution of police duties, that is, the investigation of crime and the apprehension of persons suspected of having committed a crime, and then thereafter the presentation of the results of their investigation at a criminal trial. The lower court found that the police services of the county detectives were critical because all of the municipalities of Allegheny County (with the exceptions of Pittsburgh and McKeesport) would be denied the means of scientific investigation and detection of serious crimes if the services of the county detectives were not available.

[4] In this respect see the following examples:

Sections 102, 210, 303, 819, 903, 904, 1002, 1020 and 1222 of The Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 P.S. §§102, 210, 303, 819, 903, 904, 1002, 1020 and 1222, define and delineate the authority of a "peace officer" under the Code.

Section 1 of the Act of April 29, 1897, P. L. 29, 19 P.S. §8, provides that "any constable or other peace officer" may arrest trespassers upon any forest or timberland within the Commonwealth if such person has committed, is committing, or is about to commit an offense against any law enacted to protect forests and timberlands.

Sections 94, 158, 196, 226, 270 and 274 of The Fish Law of 1959, Act of December 15, 1959, P. L. 1779, as amended, 30 P.S. §§94, 158,

a second class county and which do not make mention of the sheriff or his deputies.[5] Even a cursory legislative review leaves no doubt that the bulk of legislation dealing with the sheriff pertains to court-related activities.[6] We hasten to add that the foregoing is in no way meant to limit, or for that matter even delineate, the awesome powers of the sheriff. We are fully aware of the sheriff's function as a "peace officer."[7] He is undoubtedly one of the most powerful peace officers in

---

196, 226, 270 and 274, specifically mention the sheriff or his deputies and are examples of his authority under The Fish Law of 1959.

Sections 1207, 1811 and 1821 of the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, as amended, 25 P.S. §§3047, 3511 and 3521, specifically mention the sheriff or deputies and relate to their duties with respect to polling places during elections.

[5] In this respect see the following examples:

Section 1121 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, 53 P.S. §46121, relating to police and police departments within boroughs.

See the Act of March 7, 1901, P. L. 20, art. III, §1, as amended, 53 P.S. §22531 et seq., as it pertains to police in cities of the second class.

See Section 2005 of The Third Class City Code, Act of June 23, 1931, P. L. 932, as amended, 53 P.S. §37005, with respect to the powers of police in cities of the third class.

See Sections 1401-1403 of The First Class Township Code, Act of June 24, 1931, P. L. 1206, as amended, 53 P.S. §§56401-56403, with respect to police in first class townships.

See Sections 590-594 of The Second Class Township Code, Act of May 1, 1933, P. L. 103, as amended, 53 P.S. §§65590-65594, with respect to police in second class townships.

[6] For a comprehensive view of the sheriff's court, and court-related, activities; see Sheriffs' Association of the Commonwealth of Pennsylvania, A Compilation of The Laws of Pennsylvania Relating to the Office of Sheriff (1972).

[7] See Section 501 of the Crimes Code, Act of December 6, 1972, P. L.    , No. 334, §1, 18 Pa. S. §501, wherein we do not find a definition of the word "policeman" or "deputy sheriff," but we do find a definition for "peace officer," which reads: "Any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses,

the state. Quite candidly, however, we are somewhat dismayed by our research disclosure that the Legislature has never chosen to enact legislation delineating the general powers, duties and responsibilities of the sheriff. Nonetheless, we must conclude that the appellants are not policemen within the intent of Act 111.

It is obvious that the existing sheriff in Allegheny County operates his office in a manner different from prior Allegheny County sheriffs. Clearly, he views the operation of his office more as a police department. This can, perhaps, be attributed to his vast police experience. This record would support a conclusion that Sheriff Coon and his deputies have done an outstanding job for the people of Allegheny County. However, the existing sheriff's views and intentions cannot control the law with respect to whether his deputies are in fact policemen. It is very possible that the next duly elected sheriff may choose to restrict his office and deputies only to court functions. In such event could appellants argue they are still policemen? To ask the question is to answer it.

In carefully reading Act 111 and Act 195, the question which the lower court had to answer was whether deputy sheriffs, taking all of the facts into consideration, are "directly involved with and necessary to the courts of this Commonwealth," or more specifically the courts of Allegheny County as the facts pertain to this case. We conclude that there was sufficient substantial evidence to permit the court below to determine that the deputy sheriffs of Allegheny County are so directly involved with and necessary to the courts of Allegheny County, that they are not policemen within the intent of Act 111, but would appear to be "court-related" per-

---

whether that duty extends to all offenses or is *limited to specific offenses*, or any person on active State duty pursuant to section 311 of the Act of May 27, 1949 (P. L. 1903), known as 'The Military Code of 1949'." (Emphasis added.)

sonnel within the intent of Act 195. Although the duties described in portions of the record could be characterized as being the same as police duties, in reality those duties are incidental to the primary responsibilities of the sheriff. Clearly, the sheriff's primary responsibility is to the courts. This record substantiates the principle that although the deputy sheriffs and the sheriff may not be answerable to any other elected public officials, they must carry out the lawful orders of the courts. The record supports the proposition that although deputy sheriffs are on call 24 hours a day, seven days a week, most of them usually work Monday through Friday during court hours.

Deputy sheriffs are not required to render police services, that is, investigatory criminal police work for all of the citizens of Allegheny County. No citizen may demand the sheriff to investigate criminal activity in the same manner that a citizen may demand such service from a policeman. We agree with the court below that the deputy sheriffs of Allegheny County are not policemen within the meaning and legislative intent of Act 111. Therefore we affirm the order of the court below.