## Bilbow v. Delaware County

*Howard Richard,* for plaintiffs.
*Carmen P. Belefonte,* for defendants.

KELLY, *J.*, August 6, 1976 — This is an action in mandamus, brought by the Delaware County Park Police, to compel the County of Delaware to negotiate with them under the Act of June 24, 1968, P.L. 237 (No. 111), sec. 1, 43 P.S. §217.1 (hereinafter referred to as "Act 111").

Subsequent to the filing of a complaint, plaintiffs filed a motion for peremptory judgment under Pa. R.C.P. 1098. Defendants thereafter filed an answer to the motion for peremptory judgment and preliminary objections to the complaint.

The parties stipulated that they would withdraw the motion for peremptory judgment and the preliminary objections to the complaint so that the matter could be tried on its merits.

This court heard the matter on July 26, 1976, and on the following day the parties argued their respective positions to the court.

From the testimony produced, the court makes the following

### FINDINGS OF FACT

1. Plaintiffs are members of the Delaware County Park and Police Department and are members of a committee appointed by the employes of the Delaware County Park and Police Department to enter into collective bargaining and negotiate for wages, hours and conditions of employment pursuant to the authority granted by Act 111.

2. Delaware County is a class 2-A county organized under the laws of the Commonwealth of Pennsylvania.

3. In April 1976, a majority of the membership of the Delaware County Park Police Department designated Howard Richard, Esq., as their bargaining representative.

4. Pursuant to said designation, Mr. Richard communicated by letter to defendant, Charles C. Keeler, on April 19, 1976, informing defendant Keeler of his representation of the Delaware County Park Police Department and inviting defendants to commence collective bargaining.

5. On April 28, 1976, Mr. Richard was advised by counsel for the County of Delaware that the county was following the policy of declining to enter into any collective bargaining negotiations except upon certification of the bargaining unit by the Pennsylvania Labor Relations Board, and further advising that the county viewed the Delaware County Park Police as public employes subject to the provisions of the Public Employe Relations Act of July 23, 1970, P.L. 563 (No. 195), 43 P.S. §1101.101, and not police subject to the provisions of Act 111.

6. The Duty Manual marked P-1 has not been approved by the County Council of Delaware County.

7. Plaintiffs are issued firearms, handcuffs and badges.

8. Plaintiffs are given initial and at least annual in-service firearms training.

9. Plaintiffs are required to be armed and in uniform at all times while on duty.

10. Plaintiffs have jurisdiction over all property owned by the County of Delaware, including the Delaware County Courthouse, the Chester Central Court, the Chester Annex, the county incinerator premises, county institution complex at Fair Acres, county parks and the premises of the separate offices of the 33 District Justices of the Peace of Delaware County.

11. There are approximately 48 members of the Delaware County Police and Park Police.

12. These men are rotated in their duties both within the Courthouse and county buildings and parks. These employes work rotating shifts within the three locations, 8 a.m. to 4 p.m., 4 p.m. to 12 midnight and 12 midnight to 8 a.m. There is no third shift in the parks, but all other areas are covered 24 hours per day.

13. On July 14, 1965, the County Commissioners of Delaware County adopted a resolution creating a "protective force of Court House and County guards, watchmen, officers and park police."

14. Paragraph II of the resolution of July 14, 1965, states, "that the said protective force shall be a separate and unified department whose duties are and shall be to guard and protect all County and Institution Buildings, grounds and property, including County Parks and recreation areas, prisons and detention places, and to enforce the provisions of the County Code and other laws relating thereto."

15. Paragraph V of the resolution of July 14, 1965, states, "that the members of said protective force shall be under the control and charge of the County Commissioners and shall be assigned to such areas, buildings, grounds and property of the County and to such other duties as the County Commissioners shall determine and direct from time to time."

16. The park police are primarily responsible for security at all county buildings and parks.

17. When there is a complaint of a criminal act that amounts to a misdemeanor, the matter is turned over to the County and Criminal Investigation Division for further investigation.

18. Courthouse and park police arrest on summary offenses.

19. If the park police are called on a complaint involving the county parks, they generally do a preliminary report and turn the investigation over to the County Criminal Investigation Division. The Criminal Investigation Division will make the arrest unless the culprit is on the scene.

20. Instances involving misdemeanors or felonies that are investigated and prosecuted by the Criminal Investigation Division or by the district attorney's office are still included in the reports prepared by the courthouse and park police if they occur on county property.

21. The courthouse and park police investigate theft of county property but, as a practical matter, in most instances call in the Criminal Investigation Division for assistance.

22. To date, there have been about 100 arrests by the park police since the start of 1976. Eighty percent of these were for possession of intoxicating beverages in the parks.

23. Park police do not photograph or fingerprint.

24. Park police, assigned to the courthouse and the desk at the main entrance to the courthouse, primarily give information during their eight-hour tour of duty. A small portion of that tour of duty, approximately 30 minutes, is involved in answering calls. The individual assigned to Fronefield Hall performs a similar function. Two officers are assigned to the County Home at Fair Acres; one officer stays at the police box at the entrance and one other officer patrols the grounds. Their main function is to keep out unauthorized personnel.

25. The county has six parks and there are two shifts in each park. One man is assigned to each park during each shift.

26. None of the plaintiffs who testified could re-

call any arrests for misdemeanors or felonies since 1972 by the courthouse and park police.

27. In virtually all instances referred to in plaintiffs' testimony involving the Child Care Center at Sixth and Penn Street in Chester, the missing calculators in the courthouse or stolen pay checks from the controller's office, the Criminal Investigation Division was called in to complete the investigation.

28. The main responsibility of the park police is the preliminary investigation of damage to county property and theft of county property, together with the patrolling of county parks.

29. In the courthouse in the City of Chester, the park police are in charge of the security of the building, they handle prisoners from the lock-up to the courtroom, and they are in charge of security in the courtroom. This is a function similar to the function performed by the county sheriff's office in the courthouse at Media, Pa.

30. The captain of the park police has never given anyone in his department authority to arrest for a misdemeanor or a felony.

31. The park police do a minimum of investigation with respect to crimes committed on county property. Even in these instances, the evidence indicates that they merely do a preliminary investigation and then call in the Criminal Investigation Division to complete the case. Ordinance No. 1 of 1971, signed by the Commissioners of Delaware County; sets forth the regulations applicable to all park areas owned and operated by the County of Delaware. Said ordinance has been admitted into evidence and is set forth completely in D-2 of the exhibits.

## DISCUSSION

The Plaintiffs are all members of the Delaware County park police. This action in mandamus asks this court to compel the county council to negotiate through collective bargaining the demands of plaintiffs relating to wages, hours and conditions of employment under Act 111, supra, which applies only to "police and firemen".

Defendants, on the other hand, contend that they have no obligation to conduct collective bargaining with plaintiffs under Act 111. Rather, defendants contend that plaintiffs properly fall within the purview of the Public Employe Relations Act of July 23, 1970, P.L. 563 (No, 195), Art. VI, as amended, 43 P.S. §1101.604(3) (hereinafter referred to as "Act 195"). Under Act 195, plaintiffs would have to seek certification for collective bargaining from the Pennsylvania Labor Relations Board.

The sole issue before this court is whether the Delaware County park police, are "policemen" within the meaning of Act 111.

The first section of Act 111 reads:

"Policemen or firemen employed by a political subdivision of the Commonwealth . . . shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and condition of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this Act."

Nowhere in the Act is the term "policemen" specifically defined.

The Public Employe Relation Act (Act 195), by its terms, obviously was intended to cover all other public employes within the Commonwealth. Generally speaking, Act 195 is similar to Act 111. There are, however, two notable exceptions: (1) Act 195 generally does not provide for compulsory and binding arbitration, and (2) it does permit limited strikes under certain circumstances.

In an effort to determine whether the park police are "police" within the meaning of Act 111, a review of the legislation through which the park police gained their existence is necessary. The Act of August 9, 1955, P.L. 323, secs. 2511, 2512, 16 P.S. §§2511, 2512, is the authority by which the courthouse and park police derive their power. That power is to maintain the public parks and to enforce the rules and regulations adopted by the county council for the conduct of patrons of said parks. It is the duty of courthouse and park police, so appointed, to arrest without a warrant any offenders against the rules and regulations ordained by the county council.

Identical provisions are contained in sections 6033 and 6034 of the Second Class County Code of July 28, 1953, P.L. 723, 16 P.S. §§6033, 6034. In addition to the limited police power conferred in the foregoing sections, it is provided under the Second Class County Code, as it relates to grounds, properties and buildings, that the council may appoint one or more officers or watchmen to guard and protect the county buildings and to enforce the provisions of this act, and any other laws relating thereto. Such individuals shall have the power to

arrest on view any person violating same: 16 P.S. §5526.

It is further provided in the Second Class County Code that it shall be unlawful for any person to cause disorder in and about the county courthouse and jails: 16 P.S. §5529.

It is also clear that the park police may arrest pursuant to the authority conferred upon them by the resolution of July 14, 1965 and Ordinance No. 1 of 1971.

From a reading of the above authorities, it is clear that the primary duty of the park police is to enforce the rules and regulations for the protection of county property and to protect persons in their enjoyment and the use of county property.

The duty of plaintiffs is essentially that of patrolling the courthouse, other county buildings and county owned parks. If they are called on a complaint involving the county parks, they generally do a preliminary report and turn the investigation over to the County Criminal Investigation Division. The County Criminal Investigation Division will make the arrest unless the culprit is on the scene.

The park police assigned to the main courthouse desk primarily give information during their 8-hour tour of duty. Those assigned to Fronefield Hall perform a similar function. The two officers assigned to the Cuonty Home at Fair Acres alternate between a police box at the main entrance and a patrol of the grounds. Their main function is to keep out unauthorized personnel. In the six County parks there are two shifts in each park and one man assigned to each park for each shift.

The mere fact that plaintiffs perform some func-

tions that are also engaged in by police officers does not make plaintiffs police officers.

The common meaning of the title policeman is properly applied to one who performs services critical to public safety in investigation and detection of serious crimes — a person trained, equipped and actually engaged in the detection of persons suspected of crime: Hartshorn v. Allegheny County, 9 Pa. Commonwealth Ct. 132, 304 A. 2d 716 (1973); Beaver Falls City Council v. Human Relations Comm., 17 Pa. Commonwealth Ct. 31, 330 A. 2d 581 (1975).

The record indicates that arrests made by the Court House and Park Police generally involve the summary offense of possession of intoxicating liquor (80%), or criminal trespass. Also in conjunction with their responsibility to protect County property, the 32nd Judicial District has directed that the Park Police preserve the peace and order within the magisterial district in the City of Chester, Said Court is owned by the County of Delaware.

The Delaware County Court House and Park Police have limited powers incidental to their primary responsibilities to the County for enforcing the rules and regulations and preserving peace within County property. Most importantly, the plaintiffs are not required to render police services, that is, investigatory criminal work for *all* of the citizens of Delaware County. We do not believe that the statutes creating the Park Police indicate a legislative intent to make the plaintiffs County police officers. When the Legislature has chosen to vest a given group with police powers and duties it has done so with a fair degree of specificity: Venneri v. County of Allegheny, 12 Pa. Commonwealth Ct. 517, 316 A. 2d 120 (1974).

It is for these reasons that we feel the plaintiffs are not "policemen" within the meaning of Act 111. We, therefore, make the following

## ORDER

And now, August 6, 1976, after hearing testimony in the above matter and upon consideration of the record as well as the briefs, of the respective parties, the mandamus action filed on behalf of the plaintiffs in the above matter be and the same are hereby dismissed and a verdict is hereby entered in favor of defendants.

The Prothonotary of Delaware County shall promptly notify the parties hereto or their counsel of record of the date of the filing of this decision if no exceptions are filed hereto within 20 days after notice of the filing of this decision. Final judgment on praecipe shall be entered thereon by the Prothonotary.

Each party shall bear its own cost.