## In re Bucks County Park Rangers

*Edwin N. Popkin,* of *Begley, Carlin, Mandio and Popkin,* for County of Bucks.

*Larry J. Rappoport,* for Pennsylvania Labor Relations Board.

*Edward D. Foy, Jr.,* of *Liederbach, Eimer and Rossi,* for Bucks County Park Rangers Benevolent Association.

RUFE, *J.,* November 24, 1978—The County of Bucks (county) has appealed to this court the decision of the Pennsylvania Labor Relations Board (board) holding that the Bucks County Park Rangers (rangers) are "police" under Act 111[1] rather than "guards" under Act 195.[2] The decision is significant because police do not have the right to strike and their labor disputes are submitted to compulsory binding arbitration. Bargaining impasses involving guards are submitted to mediation and fact finding; guards do have the right to strike.

Preliminarily we note that while the county challenges the board's findings of fact regarding the authority of the park rangers to act in generally accepted police capacities, the county does not dispute the fact that the park rangers have been acting as policemen making arrests for felonies and misdemeanors as well as summary violations, assisting in local, state and FBI investigations and appearing to be trained for and acting as policemen in all respects.

The county's attack on the board's decision is three-fold:

---

1. Act of June 24, 1968, P.L. 237, 43 Pa.C.S.A. §217.1 et seq.

2. Act of July 23, 1970, P.L. 563, as amended, 43 Pa.C.S.A. §1101.101 et seq.

A. The rangers have assumed unto themselves the powers and authority as police without authorization or approval by the county;

B. The county does not have the power or authority to confer police status on the rangers even if it wanted to; and

C. The rangers are estopped from claiming to be police because they stipulated that they were guards in a prior board proceeding in 1973.

After considering the record before the board, the briefs of all counsel, and the arguments in open court, we are compelled to affirm the board's decision.

The powers and authority of the rangers as established by the county stems from two documents: ordinance no. 14 enacted by the county September 4, 1973; and the Park Rangers Manual adopted by the county on July 15, 1975.

Ordinance no. 14 does not refer to the rangers as either guards or police, but designates them as park rangers throughout. The duties of the park rangers are set forth in section 41 B as follows: "B. It shall be the duty of the Park Rangers, without warrant, forthwith to arrest any offender against the provisions of this Ordinance, and to take the person so arrested before an alderman or District Magistrate having competent jurisdiction."

The provisions of the ordinance in sections 3 through 39 set forth park restrictions to be enforced by the rangers and include various types of conduct which might constitute felonies and misdemeanors as well as the summary offenses provided for in the ordinance. For example, section 6 which prohibits destruction of buildings and other properties, and section 8 which controls the setting of fires, both describe actions which might well constitute either

the felony or misdemeanor of criminal mischief under section 3304 of the Crimes Code[3] depending upon the extent of damage caused by the prohibited conduct. Sections 9, 10, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 36, 37 and 38 all describe actions in which the violator might well commit the misdemeanor of defiant trespass under section 3503(b) of the Crimes Code, and sections 28 and 29 controlling the possession or use of drugs and alcohol within the park system might well constitute felonies or misdemeanors depending on the extent of the violation.

In addition, the Park Rangers Manual, enacted by the Bucks County Board of Commissioners on July 15, 1975, imposes the following duties on all ranger personnel:

"I. Uphold the provisions of the *constitution and laws of the United States, the constitution and laws of the Commonwealth of Pennsylvania* and of all ordinances governing the use of the Bucks County Park System.

"II. . . .

"III. Protect life and property, maintain order and morality, *prevent and investigate crimes, make legal searches, seizures and arrests and apprehend criminals.* Recover and protect evidence and personal property. Regulate traffic and prevent accidents. Give first aid treatment and provide for emergency ambulance service for the sick, injured and mentally ill. *Testify at Municipal Court Hearings, Grand Jury and Courts of Record.*

"IV. Investigate and report any *unlawful activity* in their area of assignment . . . " (Emphasis supplied.)

---

3. Act of December 6, 1972, P.L. 1482, 18 C.P.S.A. §3304, effective June 6, 1973.

Furthermore, the manual includes extensive instructions on the methods rangers are to employ in dealing with felonies and misdemeanors; controlling crime scenes and investigating crimes; the use of firearms, noting a distinction in firing at suspects who have committed certain felonies as opposed to not firing at suspects who have committed nonviolent or property felonies and misdemeanors; procedures in dealing with death cases, including possible murder situations; instructions on searching suspects; entering buildings which have been burglarized; controlling civil disorders; obtaining and executing search warrants and dealing with intoxicated motorists. In summation, the manual is a 60-page document that effectively directs the actions of the rangers in virtually complete police duties. It is ludicrous for the county to suggest that it did not expect the rangers to function as full police officers in light of the duties imposed upon them in ordinance 14 and the Park Rangers Manual, both duly enacted by the Commissioners of the County of Bucks. Accordingly, we reject the county's contention that the rangers have exceeded the authority delegated to them by the county.

Secondly, the county argues that the county commissioners do not have the power or authority to confer police status on the rangers under any circumstances. The authority for the county commissioners to establish a park system and hire park rangers is found in The County Code of August 9, 1955, P.L. 323, as amended and supplemented, 16 Pa.C.S.A. §101 et seq., with the relevant sections regarding the rangers set forth as follows:

"Section 2511. For the purpose of performing all necessary duties relating to the establishing, making, enlarging, extending and maintaining public parks and for enforcing the rules and regulations

ordained or resolved by the county commissioners or by any body or board of control where no penalty or fine is involved, the county commissioners of the county are hereby authorized to employ or appoint and equip proper persons to do all necessary and proper work connected therewith, including police or guard duty.

"Section 2512. It shall be the duty of the police or guards appointed to duty in any recreation places, without warrant, forthwith to arrest any offender against the rules and regulations, ordained or resolved by the county commissioners, that they may detect in the commission of such offense, and to take the person so arrested forthwith before a magistrate, alderman or justice of the peace having competent jurisdiction."

It is obvious that the legislature intended to authorize county commissioners to employ police officers to enforce the rules and regulations they established for their park systems. In the present case the county commissioners have established rules and regulations regarding the conduct of park users in many respects. There is no limitation on the extent of the rangers' authority to enforce those rules and regulations. Hence, the severity of the crime committed by the violation of the county commissioners' park rules and regulations may very well extend into the felony and misdemeanor sections of the Crimes Code. For example: section 6 of ordinance 14 regulates the destruction of buildings, markers, monuments and other properties within the park system and provides, inter alia, as follows: "No person shall, A . . . B. Cut, break, mark upon or otherwise injure any building, equipment, bridge,

drain, wall, fountain, lamp post, fence, gate, hedge or other structure or installation."

Obviously, under this provision, if a ranger encounters a man with a spray paint can writing graffiti on a park bridge, he can clearly arrest that person and charge him with the summary violation provided for in the ordinance. But if that same ranger were to observe that a man had "injured" that same bridge by blowing it up with dynamite, a third degree felony under section 3304 of the Crimes Code, it is clear that the above quoted sections of the County Code are broad enough to enable that ranger to do all of the police work necessary to discover the identity of the violator and place him under arrest. In addition, the Park Rangers Manual, adopted by the Bucks County Commissioners, describes in detail what procedures the ranger should follow in securing the crime scene, investigating the incident and effecting an arrest. The County Code sections specifically authorize hiring persons to do police duty to enforce those rules and regulations and do not restrict such police duty to minor infractions, or summary violations, but clearly extend to the most serious criminal violations that might occur in the park systems.[4]

It is interesting to note that the rangers have in the past made arrests for such crimes as rape, burglary, firearms violations and possession of drugs. Thus, while the duty of the rangers is "to

---

4. I.e., section 30 of ordinance 14 provides: "No person shall engage in any violent . . . conduct tending to . . . disturb or annoy others . . ." A robbery, rape, aggravated assault, etc., might violate this provision warranting Ranger intervention.

enforce the rules and regulations ordained by the County Commissioners regarding use of public parks,"[5] it is the conduct constituting the violation of those rules and regulations that determines whether or not criminal police work is necessary. We conclude that the legislature in the enabling law recognized that police duty might be necessary in the adminstration and maintenance of county parks, and that the Bucks County Commissioners, in enacting ordinance 14 and the Park Rangers Manual contemplated that upon occasion the rangers might be called upon to perform police duty and, accordingly, provided them with such authorization.

Appellant, County of Bucks, has referred us to Bilbow v. Delaware County, 1 D. & C. 3d 141 (1976); Pennsylvania Human Relations Commission v. Beaver Falls City Council, 469 Pa. 522, 366 A. 2d 911 (1976); McNitt v. Philadelphia, 325 Pa. 73, 180 Atl. 300 (1937); and Venneri v. The County of Allegheny, 12 Pa. Commonwealth Ct. 517, 316 A. 2d 120 (1974), in support of its contention that the rangers here are merely guards rather than police. However, every one of those cases is distinguishable in that the personnel there involved either did not have as broad authorization as here, or did not perform the extensive police duties performed by the Bucks County Park Rangers.

Finally, the County of Bucks argues that the rangers are estopped from claiming to be "police" because of a 1973 Labor Board ruling that they were "guards."

That ruling came about as a result of a representation petition filed by the International Union

---

5. As quoted from appellants' brief.

of Operating Engineers and opposed by the County of Bucks.[6] The only evidence presented at the hearing was that presented by the county to establish that the rangers could not be represented by the operating engineers because they were not public employes eligible for such representation, but were "guards," a classification of employes not then subject to Pennsylvania Labor Relations Board jurisdiction. See Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board, 470 Pa. 550, 369 A. 2d 259 (1977). The county now argues that because the rangers did not appeal that "guard" ruling, they are bound by it.

However, we note that the present representation petitioner, Bucks County Park Rangers Benevolent Association, was not a party to either of the prior actions and, in fact, the questions submitted here were not presented to the board in either of the prior actions. For the doctrine of estoppel to apply to the instant case, it must be established that: (1) the issue decided in the prior adjudication was identical with the one presented in this action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party to the prior adjudication; and (4) the party against whom estoppel is asserted has had a full and fair opportunity to litigate the issue in question in a prior action: Safeguard Mutual Life Insurance Co. v. Williams, 463 Pa. 567, 574, 345 A. 2d 664, 668 (1975). It is clear from a simple statement of the requirements for estoppel that not one of the elements for the application of the doctrine has been satisfied. Ac-

6. Pennsylvania Labor Relations Board case #PERA-R-3589-E. A subsequent petition filed by Teamsters Local 384 at PERA-R-9114-6 was disposed of in the same manner.

cordingly, we dismiss this contention and are led to the inescapable conclusion that the decision of the Pennsylvania Labor Relations Board must be affirmed.

### ORDER

And now, November 24, 1978, the conclusions of the Pennsylvania Labor Relations Board and the order of April 6, 1978, fixing a pre-election conference pursuant to said conclusions are hereby affirmed and the appeal therefrom of the County of Bucks is hereby dismissed.

Please note Judge Kelton did not participate.