579 A.2d 1006

**The CITY OF PHILADELPHIA, Appellant,**

v.

**Theodore S. KLUSKA, Individually and as Administrator of the Estate of Elizabeth Kluska, Deceased, Appellee.**

Commonwealth Court of Pennsylvania.

Argued May 4, 1990.

Decided Aug. 22, 1990.

Miriam B. Brenaman, Divisional Deputy For Appeals, Philadelphia, for appellant.

Stephen R. Bolden, with him, Debra Schwaderer Dunne, Fell and Spalding, Philadelphia, for appellee.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

McGINLEY, Judge.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) which denied the City's post-trial motions and awarded Gerald Kluska, beneficiary of the late Theodore Kluska, $145,068.48 in delay damages in addition to an earlier jury verdict awarding Gerald Kluska $250,000.00 for the wrongful death of his mother, Elizabeth Kluska (Decedent). The controlling issue presented for our determination is whether the City's police matrons (now known as correctional officers) are police officers within the meaning of the City Code provision which waives tort immunity for police officers.

On September 28, 1981 City police officers arrested Decedent after an incident at a fast food establishment. Decedent, intoxicated at the time, refused to leave the premises at the request of a police officer. The officer called for assistance. When the other officers arrived Decedent attempted to crawl under a van parked in the street. The officers picked up Decedent and placed her in a police van. Decedent was taken to a police station approximately one mile from her home where her name and address were obtained from a receipt in her purse. Decedent was then transported to the City Police Administration Building in order to prevent her from hurting herself or others while intoxicated. Since Decedent was only picked up for intoxi-

cation, she was not to be charged or fingerprinted and was to be released when sober. Decedent was placed alone in the cell farthest from the police matrons' station. At 9:05 p.m., approximately six hours after being taken into custody, Decedent hanged herself with her pantyhose and died.

On September 22, 1983, Theodore Kluska, Decedent's husband, instituted a wrongful death and survival action. In November 1983, the complaint was amended. The City filed preliminary objections which the common pleas court initially sustained, but later denied after reconsidering the wrongful death action under state law. On March 21, 1988, Peter Kluska was substituted as administrator of Decedent's estate following Theodore Kluska's death. The City subsequently filed a motion for summary judgment which was denied. A jury trial was held in March 1989. The jury awarded a verdict for the wrongful death of Decedent in favor of Gerald Kluska, her son, in the amount of $250,-000.00. The City filed post-trial motions for judgment *non obstante verdicto*, or in the alternative, a new trial which the trial court denied. The trial court reasoned that the matrons, although not sworn police officers, perform duties which would otherwise be carried out by police officers. The trial court concluded that permitting the City to avoid liability under Chapter 21–701(a)[1] of the City Code by delegating police duties to unsworn civilian employees would frustrate the purpose of Chapter 21–701(a). Trial court's opinion, dated November 3, 1989, at 7–8. The trial court also granted a request by Gerald Kluska for delay damages in the amount of $145,068.48 for the period of time from the filing of the complaint in September 1983 to the verdict date in March 1989. The City appeals.

On appeal, the City presents five issues. The City contends that the trial court erred in holding that appellee

---

1. Chapter 21–701(a) of the City Code provides:

    The City shall not plead governmental immunity as a defense in any civil action commenced by any person sustaining bodily injury or death caused by negligent or unlawful conduct of any police officer while the latter is acting within the scope of his office or employment.

Kluska had established a duty owed by the City to the Decedent; that the City cannot be held liable where the uncontradicted expert testimony failed to establish that the supervisory personnel either knew or should have known that Decedent presented a suicidal risk; that police matrons are not police officers for purposes of the City's "police waiver" exception to immunity; that police directives create a duty where none exists; and that the award of delay damages under Pa.R.C.P. No. 238 was improper.[2] We need only address the issue of whether the trial court erred in determining that the City's police matrons were in fact police officers within the meaning of Chapter 21–701(a) of the City Code.

The City Police Department, as reflected in a document entitled "Police Detention Matron Duties and Responsibilities," has limited the police matrons' duties to the following:

1. Being directly responsible for the custody and supervision of all female prisoners.

2. Being responsible for walking female prisoners through metal walk-in detector and will notify the supervisor when the detector registers positive as well as conducting scans by hand-held detectors and physical search, if necessary.

3. Being responsible for the proper identification and placement of prisoner identification band and placing a red 'P' on the identification bracelet when a prisoner has property for which a property receipt 75–48 is issued by detention unit personnel.

4. Being responsible for recording in the logbook the cell number and amount of money held by female prisoners.

5. Being responsible for checking with a supervisor prior to releasing any female from the custody of the

2. When examining the decision of a trial court, this Court's scope of review is limited to a determination of whether constitutional rights have been violated or whether the trial court abused its discretion or committed an error of law. *Jenkins v. McDonald,* 92 Pa. Commonwealth Ct. 140, 142, 498 A.2d 487, 488 (1985).

detention unit and ensuring correct identification by checking the prisoner I.D. band.

6. Being responsible for inspecting the cell block every fifteen minutes to maintain order, ensure sanitary conditions and determine the condition of the female prisoners. These checks will be entered in the prisoners' logbook.

7. Ensuring that no males (police or civilian) enter the female cell block. Police officers may enter only to assist the matron in controlling unruly or dangerous female prisoners.

8. Escorting female prisoners to and from the courtroom, in the company of a police officer and female intoxicants who are released from the building's premises.

9. Reporting immediately to the supervisor all incidents or unusual conditions occurring in the female cell block, including potential suicide and mental health problems.

10. Adhering to the rules, regulations and orders of the Bureau of Corrections, Pennsylvania, Department of Welfare, and the Philadelphia Police Department.

11. Entering the date, tour of duty, and matron's name in the female prisoners' log book immediately prior to the start of each tour of duty.

12. Responding to a photographer's request for a prisoner via intercom and escorting that prisoner to the Photo Station and standing by to escort the prisoner to R.O.R. when necessary.

13. Supervising the feeding of female prisoners.

Certified Record, Plaintiff's Exhibit No. 12.

In *Commonwealth v. Pennsylvania Labor Relations Board*, 125 Pa. Commonwealth Ct. 549, 558 A.2d 581 (1989), which involved an appeal from a final order of certification by the Pennsylvania Labor Relations Board's (Board), we reiterated a two part test for determining whether or not particular employees are "police" within the meaning of what is commonly known as the Policemen's and Firemen's Collective Bargaining Act, Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10 (Act 111). We affirmed

the Board's determination that park rangers were police and noted:

> While granting bargaining rights to police personnel in the Commonwealth, Act 111 fails to define who is or is not a policeman within the meaning of Act 111. In determining whether or not particular employees are 'police' within the meaning of Act 111, the Board and the courts have applied a two-part test. The test requires that the employees in question must be (1) legislatively authorized to act as police, and (2) that the employees in question must, in fact, act effectively as policemen. (Citations omitted.)

*Id.,* 125 Pa.Commonwealth Ct. at 552–53, 558 A.2d at 583.

In *Pennsylvania Human Relations Commission v. Beaver Falls City Council,* 469 Pa. 522, 366 A.2d 911 (1976), our Supreme Court defined the title of "policeman" and contrasted the duties of a police officer and a meter maid as follows:

> As Judge Rogers put it in his opinion for a unanimous Commonwealth Court, 'the title of policeman [may] be properly applied to one who performs services critical to public safety in the investigation and detection of serious crimes—a person trained, equipped (with ... gun, handcuffs, badge of office and motor vehicles) and actually engaged in the detection of persons suspected of crime.' *Beaver Falls City Council et al., v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission,* 17 Pa.Cmwlth. 31, 330 A.2d 581, 583 (1975). This definition is in accord with prior opinions which have addressed the issue. *McNitt v. Philadelphia,* 325 Pa. 73, 189 A. 300 (1937); *Venneri v. County of Allegheny,* 5 Pa.Cmwlth. 105, 289 A.2d 523 (1974) [1972]; *County of Allegheny v. Hartshorn [Hartshorn v. Allegheny County ]*, 9 Pa.Cmwlth. 132, 304 A.2d 716 (1973), aff'd 460 Pa. 560, 333 A.2d 914 (1975). The primary responsibility of the meter patrol officer, in contrast, is to ticket those automobiles which are found to be parked overtime at parking meters. Although they are sometimes asked to

look out for stolen vehicles and have, on occasion, assisted in the transportation of female prisoners, meter maids are in no way trained or equipped to engage in the investigation of persons suspected of committing serious offenses. The fact that meter maids do enforce the city's parking ordinances does not convert them to police officers. In *McNitt v. Philadelphia,* supra, we considered whether a fire marshall who was responsible for the investigation of possible arson offenses may, for that reason, be said to be a police officer. We observed that 'fire marshalls, mine inspectors, factory inspectors, boiler inspectors, and milk inspectors are all charged with law enforcement duties, but they help enforce laws affecting only special subjects, while a policeman's duty is the enforcement of a all laws whose violation affects the peace and good order of the Community.' Id. 325 Pa. at 76, 189 A. at 301. On this basis we concluded in McNitt the fire marshalls are not policemen. For like reason, meter maids cannot be considered police officers simply because they are engaged in the enforcement of a limited, specialized type of traffic regulation.

*Id.,* 469 Pa. at 527–528, 366 A.2d at 914.

In Section 5–201 of the City's Home Rule Charter the powers of policemen are defined as follows:

The members of the Philadelphia Police shall have all the powers conferred by statute and ordinance upon members of the police force of cities of the first class and upon constables of the Commonwealth of Pennsylvania. They shall have the power to make lawful searches, seizures and arrests for violations of any statutes or ordinances in force in the City, to serve subpoenas when ordered so to do by their superior officers, and to do such other acts as may be required of them by statute or ordinance.

351 Pa.Code § 5.5–201.

█ A review of the matrons' duties indicates that they are not persons actually engaged in the detection of serious crimes or the investigation of persons suspected of crime. The fact that the matrons do perform some police functions

regarding custody and search of prisoners does not convert the matrons to police officers. The matrons do perform certain enforcement functions vis-a-vis the female prisoners but, unlike police officers, are not responsible for the enforcement of all laws affecting the peace and order of the City. Thus the police matrons are not police officers within the meaning of Chapter 21–701(a) of the City Code.

The trial court reasoning that, if the police matrons were not held to be police officers, the City Police Department would be allowed to avoid liability under Chapter 21–701(a) by delegating their responsibilities to civilians. We disagree with this speculation. Exceptions to immunity must be narrowly interpreted given the express legislative intent to insulate political subdivisions from tort liability. *Mascaro v. Youth Study Center*, 514 Pa. 351, 361, 523 A.2d 1118, 1123 (1987).

The order of the trial court is reversed and this case is remanded for entry of judgment in favor of the City.

## ORDER

AND NOW, this 22nd day of August, 1990, the order of the Court of Common Pleas of Philadelphia County in the above-captioned proceeding is reversed and this matter is remanded for entry of judgment in favor of the City.

Jurisdiction relinquished.