Keystone Raceway Corporation, Appellant, *v.*
State Harness Racing Commission.

Argued May 25, 1961. Before JONES, C. J., BELL, JONES, COHEN, BOK and EAGEN, JJ.

*Thomas D. McBride,* with him *Howard Gittis, Raymond J. Bradley, John T. Macartney,* and *Oliver, Macartney and Collins,* and *McBride, von Moschzisker and Bradley,* for appellant.

*Harry L. Rossi,* Counsel, with him *Anne X. Alpern,* Attorney General, for State Harness Racing Commission and Department of Agriculture, appellees.

*Francis W. Sullivan,* for appellee.

OPINION BY MR. JUSTICE BELL, July 18, 1961:

This appeal in the nature of a special certiorari to bring before us for review the procedure pursued by the State Harness Racing Commission, raises several very important, highly technical and in some respects unusual questions concerning administrative law and procedure and the Constitutionality of certain actions of the Commission.

The present controversy arises out of the grant of a license to Liberty Bell Racing Association, one of the appellees herein, by the State Harness Racing Commission under the provisions of the Act of December 22, 1959, P. L. 1978, 4 PS §301 et seq. Section 1 of this Act created within the State Department of Agriculture a departmental administrative commission known as the State Harness Racing Commission. The Governor, by and with the advice and consent of the Senate, was authorized to and did appoint the three members of that Commission. The Commission has been given broad

supervisory and regulatory powers over all harness racing in the State at which pari-mutuel betting is permitted or conducted and, subject to provisions not presently relevant, is authorized to license no more than four corporations in any one year to conduct harness racing at tracks where pari-mutuel betting will take place.

Pursuant to §7 of the aforementioned Act the present appellants and 12 other corporations, including Liberty Bell Racing Association, filed with the Commission a notice of intention to apply for a license. Thereafter, each applicant was separately and informally interviewed by the Executive Secretary of the Commission. The Commission's counsel was also present at 12 of the 13 interviews while the chairman of the Commission was present at 9 of them. The remaining two members of the Commission attended none of the interviews. However, phonographic recordings were made of the interviews. These interviews were held before "Part I of the Application [for a license]" was filed by any of the applicants and had been characterized by the Commission as intended to give the applicants some knowledge of the information which would be required in completing applications for a license.

On December 15, 1960, "Part I of the Application" was forwarded to each applicant, and a copy of "Administrative Rule #1" was sent to each applicant on January 12, 1961. Completed applications were then filed with the Commission by all applicants* on or before January 30, 1961. Thereafter, before the Commission's meeting on April 5, 1961, all the Commissioners listened to the phonographic recordings of the above mentioned interviews and reviewed (a) the notices of intention to apply for a track license, (b) Part I of the Application, and (c) the investigation reports

---

* With two exceptions not presently material.

prepared by the State Police of all persons involved in the management of the various proposed tracks.

On April 5, 1961, pursuant to a notice dated March 23, 1961, the Commission held a scheduled meeting. At this meeting the Commission by a 2-1 vote granted Liberty Bell Racing Association one of the four licenses subject to certain conditions.* By the same vote further action on the other applications was deferred. Counsel for seven of the other applicants, including appellant, were present at the meeting and were allowed to briefly state their contentions that granting a license to Liberty Bell Racing Association was premature and that a full hearing should be held. These contentions and arguments were rejected by the Commission. The meeting was then adjourned.

Liberty Bell Racing Association is the only applicant for a license in Philadelphia County. Appellant Keystone is one of four applicants which seek to construct a racing track and facilities in Delaware County. However, in considering this appeal, it is important to note that both Liberty Bell Racing Association and Keystone Raceway Corporation (appellant) propose to construct race tracks at locations within a 20 air mile radius of Philadelphia's City Hall and each is approximately equidistant from City Hall, one north and the other southwest.

Appellant contends that the Commission committed basic and fundamental error by granting the license to Liberty Bell (a) without any hearing at which appellant and others applying and competing for a license could offer evidence and examine and cross-examine the

---

* These conditions were: "1. That you construct 1200 horse stalls rather than the 800 horse stalls suggested in your application. 2. Make available a one mile racing strip in the event 'classic races' are awarded to Liberty Bell. 3. That you complete Part II of the application for licensure which will be forwarded to you in the near future."

applicants for a license and their witnesses, and (b) without making any findings of fact to support its award of the license. Appellant further contends that the grant of a license to Liberty Bell Racing Association was a denial of due process.

## Will an Appeal Lie?

Before we consider the contentions of the appellant, we are met by the Commission's motion to quash the appeal. Two questions are immediately raised by this motion. The first question is whether an appeal in the nature of a certiorari will lie, and (secondly) if so, does the present appellant have standing to appeal.

In the last quarter of a century, independent regulatory administrative agencies, boards and commissions have mushroomed in ever increasing numbers at all levels of government—federal, state and local. Many of them have been given by Congress or a Legislature broad general powers to consider and dispose of matters of great public or private importance, although their precise duties and functions and in particular their limitations are often loosely or ill defined, and the law with respect thereto is not well settled.

Regardless of the admirable purpose for which these agencies are usually established, it is a matter of frequent complaint and common knowledge that the agencies at times act arbitrarily, or capriciously, and unintentionally ignore or violate rights which are ordained or guaranteed by the Federal or State Constitution, or established by law. For these reasons it is imperative that a checkrein be kept upon them.

If an appeal is prohibited by an Act, or the decision of the Agency is stated to be final or conclusive, the law is well settled that an appeal will lie to the Courts in the nature of a narrow certiorari and this Court will review only (1) the question of jurisdiction; (2) the

regularity of the proceedings before the Agency; (3) questions of excess in exercise of powers; and (4) constitutional questions: Cf. *DeVito v. Civil Service Commission,* 404 Pa. 354, 172 A. 2d 161 (and cases cited therein); *Dauphin Deposit Trust Company v. Myers,* 401 Pa. 230, 164 A. 2d 86.

Where, however as here, a statute is silent as to the right of appeal, or does not provide that the decision of the Agency shall be final or conclusive, or otherwise non-appealable, an appeal—if certiorari lies and if the appellant has a status to appeal thereunder— is allowed in the nature of a broad certiorari, in which event we review the testimony and the evidence and the entire record: *Ritter Finance Co., Inc. v. Myers,* 401 Pa. 467, 165 A. 2d 246; *Dauphin Deposit Trust Company v. Myers,* 401 Pa., supra; *Cumberland Valley Savings & Loan Assn. v. Myers,* 396 Pa. 331, 340, 153 A. 2d 466 (1959); *Philadelphia Saving Fund Society v. Banking Board,* 383 Pa. 253, 256, 118 A. 2d 561 (1955); *Delaware County National Bank v. Campbell,* 378 Pa. 311, 316-317, 106 A. 2d 416 (1954).

Moreover, for an appeal by certiorari to lie the Order or action of the agency, board or commission must be judicial in nature and final: *Ritter Finance Co., Inc. v. Myers,* 401 Pa., supra; *Delaware County National Bank v. Campbell,* 378 Pa., supra.

In the instant case §18 of the Act, supra, provides: ". . . The action of the commission in refusing to grant a license or in revoking or suspending a license shall be reviewable by the Court of Common Pleas of Dauphin County as provided in the act of June 4, 1945 (P. L. 1388), known as the 'Administrative Agency Law'." However, where the Commission *grants* a license the Act neither provides for nor prohibits an appeal. It is therefore clear that if the grant of a license is judicial in nature, an appeal in the nature of a broad certiorari will lie. Unfortunately, the act is so loosely

drawn * that this question and the related question of whether appellant has a standing to appeal are exceptionally difficult to answer. However, in view of the result we reach in this case, we need not and do not decide the question of whether the grant of a license is judicial or administrative in nature.

## Has Appellant Standing to Appeal?

The application of the law to the facts in this case presents a very close question. In *Ritter Finance Co., Inc. v. Myers,* 401 Pa., supra, where an appeal by a protesting small loans company was quashed, we stated the test in the following language (page 472):

" 'However, the Attorney General and the Fidelity-Philadelphia Trust Company further argue that even if certiorari lies, a [protesting] national bank has no standing or right to be heard on such appeal. In support of this contention they cite Pennsylvania Commercial Drivers Conference v. Pennsylvania Milk Control Commission, 360 Pa. 477, 62 A. 2d 9, where this Court said that to be a proper party the party " 'must have a direct interest in the subject-matter of the particular litigation, otherwise he can have no standing to appeal. And not only must the party desiring to appeal have a

---

* It is the opinion of this writer that the Act in a number of its provisions is so unfairly drawn that the Legislature should amend, clarify and correct it as soon as possible. Just three examples will suffice—no hearing for a license is required or even mentioned; no clear and definite standards are provided to guide and direct the Commission; and a license to a corporation or person who must spend $10,000,000 to $15,000,000 for a race track is granted for *one* year subject to the additional burden in §7(c) that "[e]ach application for renewal of a license shall be deemed to be an application for a new license." The actions of the Commission in connection with these license applications reflected no credit on the Commission and certainly emphasized the need for Amendments.

direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial.' " ' "

Does the present appellant have a direct, immediate and substantial interest in the grant of a harness racing license to Liberty Bell Racing Association? To answer the question we must consider several provisions of the Act as well as the pertinent facts.

Only four licenses may be issued (each year) in the entire Commonwealth of Pennsylvania. The Act pertinently provides: "Section 5. Pari-mutuel Betting at Harness Races.—*No more than four corporations shall be licensed* * by the State Harness Racing Commission *in any one year* to conduct a pari-mutuel meet or meets. No corporation shall be licensed to conduct harness racing for more than fifty days in any calendar year. . .

"Section 7. Licenses for Harness Race Meetings.— (a) Any corporation desiring to conduct harness race meetings at which pari-mutuel betting shall be permitted may apply, annually, to the State Harness Racing Commission for a license to do so. If, in the judgment of the State Harness Racing Commission, the public interest, convenience or necessity will be served thereby and a proper case for the issuance of such license is shown consistent with the purposes of this act and the best interests of racing generally, it may grant such license . . .

"(d) In considering an application for a license under this section, the State Harness Racing Commission may give consideration to the number of licenses already granted. No such license shall be granted to any track located within ten miles of a State, county or other political subdivision fair conducting harness racing unless the association, corporation, society, political

* Italics throughout, ours.

subdivision or State agency conducting such fair shall affirmatively waive objection to the issuance of such license for dates within such period.

"(e)  The commission may refuse to grant a license to a corporation, if it shall determine that:

"(1)  Any officer, director, member or stockholder of such corporation applying for a license or of any corporation which owns stock in or shares in the profits, or participates in the management of the affairs of such applicant, or which leases to such applicant the track where it shall operate: (i) has been convicted of a crime involving moral turpitude, (ii) has engaged in bookmaking or other forms of illegal gambling, (iii) has been found guilty of any fraud or misrepresentation in connection with racing or breeding, (iv) has been guilty of any violation or attempt to violate any law, rule or regulation of any racing jurisdiction, for which suspension from racing might be imposed in such jurisdiction, (v) has violated any rule, regulation or order of the commission.

"(2)  The experience, character, or general fitness of any officer, director, or stockholder of any of the aforesaid corporations is such that the participation of such person in harness racing or related activities would be inconsistent with the public interest, convenience or necessity or with the best interests of racing generally, but if the commission determines that the interest of any stockholder referred to in this clause or in clause (1) of this subsection is sufficient, in the opinion of the commission, to affect adversely the conduct of pari-mutuel harness racing by such corporation in accordance with the provisions of this act, the commission may disregard such interest in determining whether or not to grant a license to such corporation.

"(3)  The applicant is not the owner of the track at which it will conduct pari-mutuel harness racing pursuant to the license applied for, or that any person,

firm, association, or corporation other than the applicant shares, or will share, in the profits of the applicant, other than by dividends as a stockholder, or participates, or will participate, in the management of the affairs of the applicant."

The Act is unusual in that only four licenses may be issued annually in the entire Commonwealth, and upon consideration of application for licenses the Commission "may give consideration to the number of licenses already granted." Furthermore, in granting licenses, the "public interest, *convenience or necessity*" must be served by the grant of a license; and the provisions with respect to adverse interest of an officer, director or stockholder are not clear.

Considering all of the relevant facts and the pertinent language of the Act, we believe that the present appellant does not have a direct, immediate and substantial interest in the grant of a license to Liberty Bell Racing Association. This is not the case of two or more persons (or corporations) applying for a license when only one license is available. Three licenses are still available for issuance by the Commission. Moreover, since the Philadelphia metropolitan area contains a very large percentage of the Commonwealth's population, it is not unlikely that the Commission would allocate another license to this area.* In this respect *Ashbacker Radio Corp. v. F.C.C.*, 326 U.S. 327, relied on by appellants, is readily distinguishable. In that case only *one* license was available and the Federal Communications Commission conceded that the two applications for that one radio license were *mutually exclusive*. No such situation arises in the present case. There is nothing in the record in this case which demonstrates or indicates that the grant of a li-

---

* Likewise there is nothing in the Act which prohibits the Commission from granting *all* four of the licenses to one County or to one geographical area.

cense to Liberty Bell automatically excludes Keystone from consideration for a license. We believe this case is ruled in principle by *Ritter Finance Company, Inc. v. Myers,* 401 Pa., supra.

Appeal quashed.

---

JOINT DISSENTING OPINION BY MR. JUSTICE BEN- JAMIN R. JONES AND MR. JUSTICE COHEN:

In our opinion, *Ritter Finance Company, Inc. v. Myers,* 401 Pa. 467, 165 A. 2d 246, is presently inapposite.

Appellant wants to question both the administrative procedure taken by the Racing Commission in the grant of this license and the validity of the statute which created this Commission. Under the majority view, appellant has no standing to raise either question because only one out of the four licenses authorized by the statute has been issued. By implication, the appellant would have a standing only if three out of the four licenses had been issued.

The position taken by the majority ignores the realities of the situation and the practical position in which the appellant finds itself for the appellant seeks a license in the *same geographical area* in which this license has been granted. The rationale of *Ashbacker Radio Corp. v. F.C.C.,* 326 U.S. 327, in our opinion, gives this appellant a standing to question both the actions of the Commission, particularly in not granting any hearings to any applicants for a license, and the validity of the statute which contains no provisions for any such hearings.