561 A.2d 1312

**CITY OF PHILADELPHIA, Appellant,**

v.

**FRATERNAL ORDER OF POLICE, LODGE NO. 5, by Trustee Ad Litem, Robert HURST, Appellees.**

Commonwealth Court of Pennsylvania.

Argued June 6, 1989.

Decided July 20, 1989.

Ralph J. Teti, Chief Deputy, City Sol., Philadelphia, for appellant.

Thomas W. Jennings, Sagot & Jennings, Philadelphia, Gary M. Lightman, Harrisburg, for appellees.

Before CRUMLISH, Jr., President Judge, McGINLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County that voided and struck Item No. 5 of the July 19, 1988 award of the Board of Arbitrators (Board). We affirm.

The facts can be summarized as follows. Following unsuccessful collective bargaining negotiations between the City and the Fraternal Order of Police, Lodge No. 5(FOP), the FOP notified the City of its intention to proceed to binding arbitration.

The Board was presented with the collective bargaining agreement (CBA) between the City and the FOP, which was to expire July 1, 1988, and the parties' proposed issues for arbitration.[1]

The health and welfare section of the CBA provides:

VI.   HEALTH AND WELFARE

1. *Blue Cross/Blue Shield*

(a) The City shall pay to the FOP all health insurance payments for members electing *Blue Cross* and *Blue Shield* coverage.

(b) The *Blue Cross* Co–Pay Comprehensive, *Blue Shield* 100 and Major Medical Plans in effect on July 1, 1980 shall be maintained.

---

1. The parties' proposed changes to the CBA submitted to the Board are basically identical to the changes each proposed during the collective bargaining negotiations which ended in impasse.

(c) The City shall pay to the FOP the sum of One Thousand Five Hundred ($1,500.00) Dollars per month for the purpose of administering *Blue Cross* and *Blue Shield* benefits under this contract.

(d) Any employee covered by this Agreement who so chooses may participate in the City of Philadelphia administered Health/Medical program including flexible benefits.

2. Police and Fire Association (PFMA) or Health Maintenance Organization [HMO]

The City shall contract directly with the Police and Fire Medical Association (PFMA) or such other HMO designated by the employee under the following conditions:

a. The City shall pay the PFMA or other provider for the current level of benefits the same amount it pays to the FOP for members who elect *Blue Cross* and *Blue Shield* coverage.

b. The PFMA or other provider shall be required, if requested by the City in its contract with PFMA or other provider, to a quarterly audit conducted by a CPA firm selected by the City in order to determine the actual and reasonable costs incurred by the PFMA or other provider.

c. The City's monthly payment to PFMA or other provider for the period following such audit shall be adjusted to reflect the City's obligation hereunder which is to pay only the actual and reasonable costs incurred by PFMA or the provider to provide the correct level of benefits, but in no event shall the payment exceed the amount of contribution that the City pays for employees electing *Blue Cross* and *Blue Shield* coverage.

(Emphasis added.)

The FOP proposed changes to the CBA submitted to the Board provide:

7. Amend Article VI, Section (A), Subsection (1)(a) to substitute "Law Enforcement Health Benefits, Inc., (LEHB)" for FOP;

8. Amend Article VI, Section (A), Subsection (1)(b) to *add* with the elimination of the Major Medical deductible;

9. Amend Article VI, Section (A), Subsection (1)(c) to substitute "LEHB" for FOP, and to increase the Blue Cross/Blue Shield administrative fee to Five Thousand Dollars ($5,000.00) per month to improve existing Blue Cross/Blue Shield coverage by elimination of the Major Medical deductible;

10. Amend Article VI, Section (A), Subsection (2)(a) to provide that the City shall pay to PFMA whatever amount is necessary to provide for the current level of benefits now provided by PFMA;

11. Amend Article VI, Section (A), Subsection (2)(c) by *striking out* the words, "but in no event shall payment exceed the amount of contribution that the City pays for employees electing Blue Cross and Blue Shield coverage";

12. Amend Article VI, Section (B), Subsection (2)(d) by providing that the requirements of (a), (b) and (c) shall be waived, in the event the requirements of Section (d) are met;

The City also presented the following issues for arbitration:

VI.   Health and Welfare

A.   Medical and Hospitalization

Delete the current paragraphs 1(a) and (b)

Replace with the following:

(a) The City shall pay a maximum of Two Hundred Dollars per month for Medical and Hospitalization insurance for each full-time active employee in the bargaining unit.   Within sixty days (60) the FOP shall provide the City with a listing of benefits currently provided along with the costs for the same.   Said benefits shall not be expanded without agreement of the parties.

(b) Any funds that are not expended for the above listed health medical benefits shall be returned to the City.   Any rebates, return of premiums or any other

monies not expended for the above enumerated benefits shall be returned to the City.

(c) The City shall pay to the FOP the sum of One Thousand Five Hundred ($1,500.00) Dollars per month for the purpose of administering *Blue Cross* and *Blue Shield* benefits under this contract.

(d) Any employee covered by this Agreement who so chooses may participate in the City of Philadelphia administered Health/Medical program including flexible benefits.

Paragraph VI A2 shall be deleted and the benefits shall be covered by paragraph VI A1 and its subsections. (Emphasis added.)

After eight days of hearing and 2,000 pages of transcript, the Board rendered its award. Item No. 5 Health and Welfare stated:

A new provision shall be added to Article VI–Health and Welfare to provide as follows:

During the term of the contract the City may discontinue Blue Cross and Blue Shield coverage, so long as it provides substantially similar benefits to the members who elected Blue Cross/Blue Shield coverage. In the event the City purchases health insurance other than Blue Cross and Blue Shield, it shall cease paying one thousand five hundred dollars ($1500.00) per month to the FOP for the purpose of administering Blue Cross and Blue Shield benefits, and shall pay to the Police and Fire Medical Association (PFMA) the same amount it pays to the health provider for the substantially similar benefits it provides to the members who elected Blue Cross/Blue Shield coverage.

The FOP-designated arbitrator wrote a dissenting opinion, faulting the majority for addressing an issue that had not been submitted to it for resolution. The FOP appealed to the trial court asserting, one, that the Board exceeded the scope of its authority because there had never been a dispute between the parties in the collective bargaining negotiations regarding the *identity* of the existing health

insurance carrier, Blue Cross/Blue Shield (BC/BS); two, that neither party identified that issue as being "in dispute" in convening the Board to resolve the impasse; and finally, that the issue was not contained within the mandated specification of issues.

The trial court sustained the FOP's appeal and voided Item No. 5 of the award as being beyond the scope of the Board's authority because the issue of whether BC/BS would continue as the FOP's insurer was not presented to the Board for resolution. This appeal followed.

The sole question before this Court is whether the trial court erred in finding that the Board exceeded the scope of its authority by determining an issue which the court found was not properly presented for resolution as required by the Act of June 24, 1968, P.L. 237 (Act 111), 43 P.S. § 217.4.[2] The issue, which the City now asserts was presented to the Board, and thus, was ripe for resolution, was the City's desire to lower its insurance cost which could be arrived at by possibly discontinuing Blue Cross/Blue Shield (BC/BS) as the insurer for the FOP employees. The City argues that change of insurer is implicit in the issues submitted concerning health and welfare and is inherently commingled with the issue of insurance costs.

The City argues that the trial court erred in finding the Board exceeded the scope of its authority, *Appeal of Upper Providence Police Delaware County Lodge No. 27 Fraternal Order of Police,* 514 Pa. 501, 526 A.2d 315 (1987); *Township of Moon v. Police Officers of the Township of Moon,* 508 Pa. 495, 498 A.2d 1305 (1985), in permitting the City to discontinue BC/BS, because a "determination of the

**2.** Section 217.4 states in pertinent part:
    (a) If in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employes are unable to effect a settlement, then either party to the dispute, after written notice to the other party *containing specifications of the issue or issues in dispute,* may request the appointment of a board of arbitration.
(Emphasis added.)

majority of the board ... shall be final on the issue or issues in dispute...." Section 7(a) of Act 111, 43 P.S. § 217.7(a).

The FOP asserts that the Board was presented with the issue of *how much* BC/BS coverage would be provided to the employees, and not, *if* BC/BS coverage would be retained.

■ Although a board of arbitrators is permitted to enter an award as to any legitimate term or condition of employment within the statutorily permitted scope of collective bargaining, *Borough of Ambridge Appeal*, 53 Pa.Commonwealth Ct. 251, 417 A.2d 291 (1980), Act 111 specifically requires the issue to be "submitted" to the Board.

■ In reviewing the issues presented, we cannot find that the issue of changing insurers was presented to the Board. In fact, the City's submitted change VI(A)(1)(c) to the CBA stated that it "shall pay to the FOP the sum of One Thousand Five Hundred ($1,500.00) dollars per month for the purpose of administering *Blue Cross* and *Blue Shield* benefits under this contract." This written proposal demonstrates that the City did not submit to the Board as an issue for resolution a desire to change the insurance carrier.

Item No. 5 of the Award permits discontinuance of the BC/BS coverage "so long as [the City] provides substantially *similar* benefits...." With the City's goal of lowering its insurance costs, it could obtain another carrier for the employees under the present BC/BS policy. The problem arises that the employees who have chosen the HMO plan would no longer receive similar benefits since the HMO payment is based on the premium paid to the insurer. If the insurance premium is reduced by changing carriers, the employees selecting HMO would receive reduced HMO benefits. Therefore, these employees would receive "substantially similar" benefits if the City reduces its insurance costs.

Neither the change of carrier nor the effect upon the FOP employees which select the HMO plan was ever sub-

jected to the "give and take" of the bargaining table which resulted in the impasse of negotiations between the City and the FOP. The purpose of Act 111 makes clear that the arbitration process is not intended to supplant the collective bargaining process by permitting the Board to impose its own concepts of the parties' needs. The Board created its "own brand of industrial justice" that went beyond the issues of the impasse or the submission of the specification of issues to the Board. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

An award must be drawn from the essence of the collective bargaining agreement. *Id.; See also Scranton Federation of Teachers, Local 1147, AFT, v. Scranton School District*, 498 Pa. 58, 444 A.2d 1144 (1982); and *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 99 Pa. Commonwealth Ct. 641, 513 A.2d 1125 (1986). The change of insurers cannot be drawn from the "essence" of the CBA presented to the Board.

The City also argues that it reserved the right "to add to and/or modify these proposals during the course of negotiations and/or arbitration." (City Proposals For Bargaining, p. 1). The City contends that it presented the issue of changing insurers through the testimony of its witness, Robert A. Zelten, Ph.D. Dr. Zelten's testimony described how employers deal with the rising cost of insurance.[3] Only once in the 2,000 pages of transcript does Dr. Zelten mention that some Philadelphia employers "shop around" for insurance. This statement of "shopping around" does not automatically become a ripe issue for determination by the Board. As so aptly stated by Judge Samuel M. Lehrer in the lower court opinion, we must agree that:

**3.** The City relies heavily on the dissenting opinion in the Supreme Court's decision in *Lower Merion Fraternal Order of Police, Lodge No. 28 v. Township of Lower Merion*, 511 Pa. 186, 512 A.2d 612 (1986) (equally divided Court), *aff'g* 88 Pa.Commonwealth Ct. 169, 489 A.2d 290 (1985). In a subsequent memorandum decision, the Supreme Court granted reargument and then proceeded to dismiss the appeal as having been improvidently granted.

[t]he quality of medical care is of vital concern to every employee and his or her family. Its importance to individual employees is measured not only by its cost but also by an intangible comfort derived from its reputation. This is not to assay or suggest that other providers are not equal to or better than BC/BS. However, where an insurance carrier of the caliber of BC/BS has been the carrier for several years, its continued existence is a substantial factor worthy of specific discussion before the Board of Arbitrators. In order to be so discussed, it should be framed as an issue in advance, or by agreement of the parties and made an issue expressly before the panel. One has a right to assume that such a component of the terms, conditions and benefits of employment would not or could not be taken from him without such express notice.

Accordingly, we affirm the order of the trial court which struck and vacated Item No. 5 of the July 19, 1988 award by the Board.

## ORDER

AND NOW, this 20th day of July, 1989, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.