**FRATERNAL ORDER OF POLICE, LODGE NO. 5, by its trustee ad litem Richard COSTELLO, Appellant,**

v.

**CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1998

Decided Jan. 28, 1999.

Thomas H. Kohn, Philadelphia, for appellant.

Mark J. Foley, Philadelphia, for appellee.

Before FLAHERTY, J., LEADBETTER, J., and RODGERS, Senior Judge

LEADBETTER, Judge.

The Fraternal Order of Police, Lodge No. 5(FOP) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) denying its petition to vacate or modify an interest arbitration award.

The facts, as found by the trial court, are as follows. The FOP is the exclusive bargaining representative for certain employees of the City of Philadelphia (City) who work in the Sheriff's Department and the office of the Register of Wills. Following the June 30, 1992 expiration of the collective bargaining agreement for these employees, the City and the FOP were unsuccessful in negotiating a successor agreement. In October 1995, the FOP declared an impasse and initiated interest arbitration [1] under Section 805 of the Public Employe Relations Act,[2] commonly known as "Act 195," 43 P.S. § 1101.805.[3] Following hearings, the arbitration panel (two party-appointed arbitrators and one

---

1. "Interest" arbitration involves the resolution of an impasse in collective bargaining over the terms of a new contract, as opposed to "grievance" arbitration, which involves the resolution of a dispute over the proper interpretation of an existing collective bargaining agreement. *Township of Moon v. Police Officers of Township of Moon*, 508 Pa. 495, 501 n. 5, 498 A.2d 1305, 1308 n. 5 (1985).

2. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

3. Section 805 of Act 195 provides:
   Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be *final and binding* upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.
   43 P.S. § 1101.805 (emphasis supplied).

"neutral") issued an award, over the dissent of the FOP's arbitrator, that set forth the terms and conditions of employment for the affected City employees for the period commencing July 1, 1996 and ending June 30, 2000.[4]

The FOP petitioned to vacate or modify the award, asserting that there was insufficient testimonial evidence in the record to support six of its provisions.[5] The trial court concluded that the City presented ample evidence to support the arbitrators' findings concerning the challenged award provisions and denied the petition. This appeal followed. On appeal, the FOP again asserts insufficiency in the evidence to support the challenged provisions of the award.

■■■ The scope of review of an Act 195 interest arbitration award is an issue of first impression.[6] The FOP asserts that we should review the award under the "essence test," as did the trial court. Under the essence test, applied in reviewing grievance awards under Act 195, we will uphold an award as long as it draws its essence from the collective bargaining agreement in force. *Crawford County v. AFSCME Dist. Council 85 Local Union No. 2643,* 693 A.2d 1385, 1388 (Pa.Cmwlth.1997). We find the essence test singularly inappropriate, however, for review of an *interest* arbitration award. In interest arbitration, there is no collective bargaining agreement for the arbitrators to interpret. Indeed, the point and goal of interest arbitration is for the arbitrators to formulate an agreement because the parties have been unable to do so. Thus, review of whether an interest award draws its essence from a nonexistent agreement would be oxymoronic.

■■■ Presumably realizing that the essence test as universally defined sets forth an impossible framework for reviewing an interest award, the FOP suggests that we rewrite the test to provide that an interest award must be vacated where it is not supported by the evidence presented to the arbitrators. Appellant suggests that an award must be supported by "record evidence or there is a denial of due process." In this regard, appellant cites a series of federal decisions, all of which arise in the context of *grievance* arbitration awards. The flaw in appellant's argument is that it ignores the fundamental distinction between the two types of proceedings. Grievance arbitration is essentially a factfinding process. In many cases, the arbitrator(s) must determine whether a violation of the collective bargaining agreement has occurred and, if so, fashion a remedy under the terms of that agreement. In other cases, the arbitrator(s) must resolve a dispute over the proper interpretation of the agreement. This, too, is a factfinding exercise. *See Community College of Beaver County v. Community College of Beaver County, Soc'y of the Faculty (PSEA/NEA),* 473 Pa. 576, 592, 375 A.2d 1267, 1275 (1977). A reviewing court can readily determine whether there is sup-

4. This arbitration was the first conducted between the FOP and the City after the enactment of the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class (PICA Act), Act of June 5, 1991, P.L. 9, 53 P.S. §§ 12720.101–12720.709. The PICA Act was enacted to assist the City in resolving its fiscal crisis and to improve the City's financial management. Under the PICA Act, the City was required to develop and adopt a five year financial plan and enter only into collective bargaining agreements which were in compliance with that plan. The PICA Act also requires that arbitration panels accord substantial weight to both the five year plan and the City's ability to pay when considering whether to grant pay or fringe benefit increases.

5. The FOP challenged the following paragraphs of the award: 3—Management Rights; 4—Service Connected Disability; 5—Work Schedules;

6 – Contracting Out; 11 – Performing Duties of an Equivalent or Lower Level Class; and 12 – Transfers.

6. *See City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 129 Pa.Cmwlth. 392, 565 A.2d 1232, 1235 (1989). The FOP cites *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 127 Pa.Cmwlth. 422, 561 A.2d 1312, 1316 (1989) as support for its contention that the essence test applies to interest as well as grievance arbitration proceedings. In that appeal (from an Act 111 interest arbitration award), there was a reference to the essence test, but the scope of review issue does not appear to have been presented to the court. At all events, the FOP concedes that this is not good law in light of *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt),* 540 Pa. 66, 656 A.2d 83 (1995). *See also Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969).

port in the evidence and the agreement for the findings and the ultimate award.

■ On the other hand, interest arbitration involves fashioning a new contract by compromising the competing interests and desires of opposing parties who simply cannot agree. We are at a loss to determine how a reviewing court could measure the sufficiency of "evidence" to support the award of a contract provision propounded by one side and resisted by the other.

Even if we were not persuaded by such pragmatic considerations, we would still conclude that the proper scope of review is narrow certiorari, utilized by our courts in reviewing interest awards under Act 111.[7] In light of the similarity between mandatory interest arbitration pursuant to Act 111 and mandatory interest arbitration pursuant to Act 195, and the history and caselaw interpreting the statutory language, we believe that the same scope of review is applicable under both provisions.

In 1968, Act 111 conferred upon police and firefighters the right to bargain collectively, but withheld the right to strike because of the crucial services they perform. To resolve bargaining impasses, Act 111 mandated that employers submit to binding interest arbitration pursuant to the procedures specified therein. *Township of Moon v. Police Officers of Township of Moon,* 508 Pa. 495, 503, 498 A.2d 1305, 1309 (1985). Two years later, Act 195 conferred the right to bargain collectively on the remaining public employees. Because their services were not as critical to public safety and welfare, the legisla-

ture conferred a limited right to strike and provided a *voluntary* interest arbitration procedure, with the exception of mental hospital and prison guards and court employees.[8] Because the services of guards and court employees, like those of Act 111 employees, are critical to public safety and welfare, the legislature withheld the right to strike from these groups and mandated binding interest arbitration in the case of an impasse in contract negotiations. It is with these groups that we are here concerned.

In *Washington Arbitration Case,* 436 Pa. 168, 174, 259 A.2d 437, 441 (1969), our Supreme Court determined that interest arbitration awards are appealable only pursuant to a narrow certiorari scope of review. Quoting *Keystone Raceway Corp. v. State Harness Racing Comm'n,* 405 Pa. 1, 5–6, 173 A.2d 97, 99 (1961), the court noted:

If an appeal is prohibited by an Act, or the decision of the Agency is stated to be final or conclusive, the law is well settled that an appeal will lie to the Courts in the nature of a narrow certiorari and this Court will review only (1) the question of jurisdiction; (2) the regularity of the proceedings before the Agency; (3) questions of excess in exercise of powers; and (4) constitutional questions.

436 Pa. at 174, 259 A.2d at 441.[9]

■ Both Act 111 and Act 195 provide that interest awards are final and binding, and neither Act 111 nor Act 195 provides for an appeal from such awards.[10] Act 111 provides that the arbitrators' decision "shall be

---

7. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–10. Act 111 governs collective bargaining between a public employer and its police and fire employees.

8. This court has determined that employees of county sheriff's departments are "employees directly involved with and necessary to the functioning of the courts of this Commonwealth" within the meaning of Section 805 of Act 195, set forth *supra. Venneri v. County of Allegheny,* 12 Pa.Cmwlth. 517, 316 A.2d 120, 127 (1974).

9. In *Washington,* the court predicated the right of review by way of narrow certiorari on former Supreme Court Rule 68 1/2. Subsequent cases have made clear that, even though Rule 68 ½ has been repealed, the court has retained and consis-

tently adhered to the scope of review. *See Appeal of Upper Providence Police Delaware County Lodge No. 27 Fraternal Order of Police,* 514 Pa. 501, 507, 509–10, 526 A.2d 315, 318–19 (1987); *Township of Moon,* 508 Pa. at 500 n. 4, 498 A.2d at 1307 n. 4.

10. The legislature clearly intended that substantial deference be afforded arbitration awards issued under Act 111 and Act 195. *See Guthrie v. Borough of Wilkinsburg,* 508 Pa. 590, 597, 499 A.2d 570, 573 (1985). As our Supreme Court stated in *Washington,* the arbitrators' "resolution of the dispute must be sure and swift, and much of [the arbitrators'] effectiveness would be lost if the mandate of [their] decision could be delayed indefinitely through protracted litigation." 436 Pa. at 173, 259 A.2d at 440.

final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved.... No appeal therefrom shall be allowed to any court." 43 P.S. § 217.7. Similarly, Section 805 of Act 195 provides that an interest award "shall be final and binding upon both parties," and makes no allowance for judicial review. 43 P.S. § 1101.805.[11] Accordingly, we hold that appeals from mandatory interest arbitration under Section 805 are limited, like appeals under Act 111, to review in the nature of narrow certiorari.

■ We do not, by rejecting appellant's proffered scope of review, in any way suggest that one is not entitled to due process in interest arbitration proceedings, only that due process does not require application of appellant's reformulated "essence test" in their review. Arbitration panels must conduct their proceedings in accordance with the mandates of due process. *Washington*, 436 Pa. at 173, 259 A.2d at 440. The essential elements of due process are notice and the opportunity to be heard in a full and fair hearing before an impartial decisionmaker. *Abramovich v. Pennsylvania Liquor Control Bd.*, 490 Pa. 290, 294, 416 A.2d 474, 476 (1980); *Greenstein v. Commonwealth, Dep't of Health*, 98 Pa.Cmwlth. 445, 512 A.2d 739, 743 (1986). The FOP has not asserted that it

did not receive proper notice or an opportunity to be heard, nor that the panel was biased or predisposed against it. There is nothing in the record to indicate that the FOP was denied a fair hearing. The FOP argues only that due process requires us to determine whether the award was supported by testimony of record, an inquiry precluded under narrow certiorari review. For purposes of the due process clause, however, there is no basis to distinguish between appeals under Act 111 and those under Act 195.[12]

■ The only specific claim of error cognizable under the narrow certiorari scope of review is the FOP's claim that the arbitrators exceeded their power by including paragraph five in the award.[13] An arbitration panel's powers are limited; it may not mandate that a public employer perform an illegal act, *i.e.*, an act that is prohibited by law or is not within the employer's authority. *Appeal of Upper Providence Police Delaware County Lodge No. 27 Fraternal Order of Police*, 514 Pa. 501, 513, 526 A.2d 315, 321 (1987). In addition, a panel may only require a public employer to do that which the employer could do voluntarily. *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 79, 656 A.2d 83, 90 (1995).

11. The FOP does not here challenge the validity of § 805.

12. Indeed, in an appeal arising under Act 111, this court found no merit to the appellant's objection to the fact that counsel for the Police presented their case in narrative form, without calling any witnesses to testify. *Dunmore Police Ass'n v. Borough of Dunmore*, 107 Pa.Cmwlth. 306, 528 A.2d 299, 301 (1987).

13. Paragraph five of the award provides:

(a) Except as provided below, any proposal by the City to modify work schedules shall be submitted for discussion to a joint committee with an equal number of representatives of the Union and the City. If no agreement is reached regarding the City's proposal, the disagreement shall be submitted to a mutually agreed upon neutral who shall be required to fully resolve the issues in dispute within ten (10) days of the date of submission. The City may not implement any terms of its proposal until issuance of the neutral's decision. Any proposal by the FOP to modify work schedules

also shall be submitted to the committee: however, no such proposal will be submitted to the neutral and will not be implemented unless the parties reach agreement.
(b) Once during the calendar year the City shall have the right to change schedules within a recognized work unit without the requirement of a submission to a neutral, provided that affected bargaining unit members are given at least thirty (30) days notice of a change in schedule. A schedule change shall not result in a change of more than one day in an employee's work week, more than eight hours going forward from the employee's regular shift, split shifts, or more than two different starting times in a work week.
(c) Employees will be excused from the schedule change for hardship, provided that this is consistent with the Department's operational needs.
(d) Any modification in work schedule required by the President Judge or his or her equal of any Court serviced by the Sheriff's Department shall not be the [sic] subject to this clause.
R.R. 11a.

The FOP argues, citing *Dunmore Police Ass'n v. Borough of Dunmore,* 107 Pa.Cmwlth. 306, 528 A.2d 299 (1987), that paragraph five, which provides that "any proposal by the City to modify work schedules shall be submitted for discussion to a joint committee with an equal number of representatives of the Union and the City," is precluded by law and, thus, exceeds the arbitrators' power. We disagree. In *Dunmore,* because the arbitration panel could not reach a decision on the issue of scheduling, it formulated its award without deciding the scheduling issue and delegated the issue to a separately constituted negotiating committee. This court noted that because Act 111 requires a panel to reach a final, binding determination of the issues in dispute within a prescribed period of time, its purposes would be defeated if an issue in dispute were permitted to be delegated to another decisional body. 528 A.2d at 302. As a result, we concluded that the panel exceeded its powers in delegating one of the disputed issues, and vacated that provision of the award.

Here, the panel did not decline to decide a disputed issue or delegate the issue to a separate body to decide. A reading of paragraph five makes clear that the panel decided that the City would be permitted to change work schedules once each year by following certain enumerated steps, but would be required to submit any additional proposals to modify work schedules to a joint committee. Thus, the work schedule issue was not delegated; it was decided. The language cited by the FOP simply sets forth how the parties are to resolve any future proposals. Since the award represented a decision on all the issues in dispute, the arbitrators did not exceed their powers.

Accordingly, we affirm the order of the trial court.

### ORDER

AND NOW, this 28th day of January, 1999, the order of the Court of Common Pleas of Philadelphia County in the above captioned matter is hereby affirmed.

FLAHERTY, Judge, concurring.

I agree with the majority that the present state of the law compels us to extend the narrow certiorari test of *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt),* 540 Pa. 66, 656 A.2d 83 (1995), to this final and binding interest arbitration award under Section 805 of Act 195 [1] governing the employees of the Sheriff's Department necessary to the functioning of the courts.

The purpose of this opinion is simply to clarify my understanding of the majority opinion in which I concur.[2]

The principal question of any consequence raised by the appellant FOP relates to the third prong of the narrow certiorari test cited by the majority (Majority Op., at page 209), to wit, whether the award exceeded the arbitrators' powers. Here, the FOP challenges the arbitration award on the grounds that there is *no* evidence in the record to support the challenged portions of the award. If that were the case, I would vacate the arbitrator's award even with a narrow certiorari scope of review to prevent arbitrators who are essentially rewriting labor contracts which award benefits or make concessions on matters not previously discussed, negotiated or otherwise raised by at least one of the parties and to prevent arbitrators "from imposing their own brand of industrial justice." (Appellant's Brief, p. 9.)

Such is not the case here, however. The FOP in its brief at p. 14 cites six proposals as the basis for its claim of "no evidence": management rights, disability program, work schedule changes, subcontracting, employees performing lower rated work and Civil Service Regulation 13. In each case, however, the FOP's analysis claims that the "only evidence" offered by the city is so inadequate or

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.805 (Act 195).

2. Because art. III, § 31 of the Pennsylvania Constitution does not appear to permit interest arbitration of disputes other than for policemen and firemen, it is questionable whether any Act 195 interest arbitration would be constitutional in any event. Since the constitutionality of the interest arbitration in the instant case was not raised, however, it has been waived and this court will not raise it, *sua sponte.*

insufficient as to virtually amount to no evidence. Thus, this is not a case where the arbitration panel is creating new items in the contract, which were not previously submitted by one of the parties but is merely the fashioning of a compromise of items in dispute by the parties. This process is not in excess of the powers of the panel under either the narrow certiorari test, the essence test or a substantial evidence test, in all of which cases there may be less evidence in favor of one item granted or denied than another. Otherwise, the appellate court would be reweighing the evidence, which is what the FOP basically seeks here. There seems to be only one sure way for a party to prevent an adverse interest arbitration award where that party may have more evidence on certain subjects than the other, and that is to settle and not go to arbitration.