AFSCME, DISTRICT COUNCIL 33 and AFSCME, Local 159, Appellants

v.

CITY OF PHILADELPHIA.

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 2014.

Decided July 10, 2014.

Claiborne S. Newlin, and Samuel L. Spear, Philadelphia, for appellants.

Shannon D. Farmer, Philadelphia, for appellee.

BEFORE: BERNARD L. McGINLEY, Judge, and ANNE E. COVEY Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.

American Federation of State, County and Municipal Employees, District Council

33 (AFSCME), and American Federation of State, County and Municipal Employees, Local 159 (Local 159) (collectively, Union) appeal the order of the Court of Common Pleas of Philadelphia County (common pleas court) that denied the Union's petition to vacate an interest arbitration award entered pursuant to the Public Employe Relations Act[1] ("Act 195"), 43 P.S. §§ 1101.101–1101.2301.

AFSCME is the exclusive bargaining representative for the City of Philadelphia's (City) nonprofessional and non-uniformed employees. Local 159 is a local organization within AFSCME which primarily provides day-to-day representation of the City's correctional officers.[2]

The City and AFSCME are parties to a collective bargaining agreement covering 10,000 employees of the City, including more than 2,000 employees of the Philadelphia Prison System. The collective bargaining agreement governs the wages, hours and working conditions of the employees represented by the Union, including those in Local 159.

In 2009, after negotiations failed to result in an agreement, interest arbitration was invoked pursuant to Act 195. Twelve days of hearings were held before an arbitration panel. It was the City's position that it did not have the money to fund the Union's demands. The City asserted that it faced historic financial difficulties and that increasing costs associated with the City's workforce would challenge the City's financial viability. The City argued that that consideration of an employer's ability to pay in an interest arbitration proceeding was appropriate and permissible. The City cited the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class, (PICA Act), 53 P.S. §§ 12720.101, et seq.[3] The City presented the testimony of its Health Commissioner and Deputy Mayor for Health and Opportunity and its Director of Finance.

The Union's position was that it sought fair compensation for its members who it argued were subjected to extraordinarily difficult, hazardous, and dangerous working conditions. The Union argued that the City's financial health was irrelevant.

On March 16, 2012, the arbitration panel issued an award. The award provided benefit increases and changes in working conditions that were sought by the Union and also awarded modifications requested by the City. The arbitration panel determined it was proper to consider the City's "ability to pay." The panel noted that the Union presented no substantive economic evidence to challenge the economic evidence presented by the City in support of its position that its economic condition was dire. In the panel's view:

---

1. Act of July 23, 1970, P.L. 563, *as amended.*

2. Section 1001 of Act 195, 43 P.S. § 1101.1001, prohibits these correctional officers from striking. Under Section 805 of Act 195, 43 P.S. § 1101.805, correctional officers have the right to have their contract arbitrated by a panel of arbitrators.

3. The PICA Act states:
   [a]ny determination of a board of arbitration established pursuant to the provisions of the act of June 24, 1968 (P.L. 237, No. 111), referred to as the Policemen and Firemen Collective Bargaining Act [Act 111], providing for an increase in wages or fringe benefits of any employee of an assisted city under the plan, in addition to considering any standard or factor required to be considered by applicable law, *shall* take into consideration and accord substantial weight to: (1) the approved financial plan; and (2) the financial ability of the assisted city to pay the cost of such increase in wages or fringe benefits without adversely affecting levels of service.
   53 P.S. § 12720.209(k)(3).

[T]his proceeding is overlaid by the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class, 53 P.S. Sections 12720 et seq., referred to supra as the 'PICA Act.' This statute enacted in 1991, during Philadelphia's financial crisis, required the City to project its revenues and expenses forward over five years, and the City's budgetary revenue and cost projections would be subject to oversight by the Pennsylvania Intergovernmental Cooperation Authority. It is within this reality that this Panel must determine the extent to which the parties' proposals are to be assessed.

Simply stated, the Panel cannot adopt the Union's argument that we disregard the City's ability to pay.

The City has presented overwhelming evidence through the testimony of City Finance Director Rob Dubow that it does not have the ability to fund many of the Union's proposals, including, most significantly, the Union's proposal for 8% wage increases beginning, retroactively, on July 1, 2008.

Interest Arbitration Panel Award, March 16, 2012, at 13.

On November 21, 2012, the Union petitioned to vacate portions of the award. In Count I, the Union asserted that the arbitrators wrongly asserted that any award must be governed by the PICA Act such that the arbitration panel placed a disproportionate emphasis on the City's ability to pay. Therefore, the arbitration panel "exceeded its jurisdiction:"

14. The Award exceeded the jurisdiction of the Panel for the reasons set forth below and in the accompanying brief. Specifically, the Panel wrongly asserts that any award must be governed by the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class, 53 P.S. §§ 12720.101 et seq. (the PICA Act).

15. By its terms, the PICA Act does not apply to Act 195 Interest Arbitration.

16. By relying on the PICA Act, the Panel placed a disproportionate emphasis on the City's ability to pay, therefore, exceeding its jurisdiction.

17. In professed reliance on PICA, the panel majority failed to issue a wage award covering the period July 1, 2009, through July 1, 2012, failed to reinstate unilaterally suspended Step and Longevity increases retroactively, raised the pension contribution rates for current employees effective July 1, 2013, and removed holiday pay, sick pay and administrative leave as paid time for purposes of calculating when overtime is due.

Second Amended Petition to Vacate Act 195 Interest Arbitration Award, November 20, 2012, Paragraph Nos. 14–17 at 4; Reproduced Record (R.R.) at 12A.

On April 5, 2013, the common pleas court denied the petition to vacate the arbitration award:

The Court finds that to the extent that the Arbitration Panel (hereinafter referred to as 'Panel') based its Award on the economic restraints of the City of Philadelphia pursuant to 53 P.S. § 12720.101 et seq. (hereinafter referred to as 'PICA'), the Arbitration Panel clearly applied the incorrect law in the instant arbitration. Mot. To Vacate (04/23/2012) (Exhibit A. at 13). The instant Arbitration is governed by 43 P.S. § 1101.101 et seq. (hereinafter referred to as 'PERA Act 195'). PICA only applies to arbitrations under 43 P.S. § 217.1 et seq. (hereinafter referred to as 'Act 111'). The Panel is not authorized to consider PICA and economic restraints under PERA Act 195 arbitra-

tions. 43 P.S. § 1101.101 et seq.; 53 P.S. § 12720.101 et seq. Therefore, the Panels' consideration of PICA amounts to a misapplication and error of law. However, misapplications of law, alone, are not proper grounds upon which this Court can vacate the Arbitration Award. *Dep't of Corr. v. Pa. State Corr. Officers Ass'n* [608 Pa. 521], 12 A.3d 346, 356 (Pa.2011). The Court is compelled to reject Plaintiff's [Union] argument that the Panel operated in excess of its powers by applying PICA to the instant PERA Act 195 Arbitration. In addition, Plaintiffs [Union] are not entitled to relief on any of the other three (3) prongs of the narrow certiorari scope of review. FOP Lodge No. 5, supra.

Common Pleas Court's Order, April 5, 2013, at 1, n. 1.

■ On appeal[4], the Union raises two issues: (1) whether the common pleas court erred when it found that the arbitration panel's improper reliance on the PICA Act did not constitute an "excess of jurisdiction;" and (2) whether the common pleas court erred when it determined that the arbitration panel's improper reliance on the PICA Act constituted a mere "error of law" and not an "excess of power"?

## I.

### *Did the Arbitration Panel Exceed its Jurisdiction When it Considered the PICA Act?*

■ The issue of an arbitrator's jurisdiction traditionally poses a single question: did the decision-maker in the adjudicatory process act in that general class of controversies that the law empowers it to consider? *IAFF, Local 22.* To determine whether an arbitrator had jurisdiction to decide an issue, "the courts look to the Pennsylvania Constitution and the laws of the Commonwealth, the sources of the decision-maker's jurisdiction." *IAFF, Local 22*, 999 A.2d at 564.

Here, there is no question that the panel acted in the general class of controversies that the law empowered it to consider.

■ The Union argues that the arbitration panel's consideration of the PICA Act placed a controversy in dispute that was not of the type the panel was authorized to consider under Act 195. This Court must disagree.

The Union's present challenge is actually one to the *amount of weight* accorded by the panel to the City's ability to pay. Even if the Union was correct, placing a disproportionate emphasis on the City's ability to pay is not the equivalent of improperly considering a dispute that did not arise out of the collective bargaining process. Here, the panel considered the Union's request for significant increases in pay, and specifically an 8% annual wage increase retroactive to July 1, 2008. The City, on the other hand, argued that it simply could not meet that demand without devastating consequences. Clearly,

---

4. The scope of review of an Act 195 interest arbitration award is narrow certiorari. *Fraternal Order of Police, Lodge No. 5 ex rel. Costello v. City of Philadelphia*, 725 A.2d 206, 209 (Pa.Cmwlth.1999). Under narrow certiorari, the Court will review only: (1) questions of whether the panel acted in excess of its jurisdiction; (2) the regularity of the proceedings before the Agency; (3) questions of whether the panel acted in excess of its powers; and (4) constitutional questions. *Id.* at 209. Consideration of legal issues is plenary. *City of Scranton v. Firefighters Local Union No. 60*, 612 Pa. 23, 29 A.3d 773, 786 (2011); *City of Philadelphia v. International Ass'n of Firefighters, Local 22 (IAFF, Local 22)*, 606 Pa. 447, 999 A.2d 555, 564 (2010).

As to those four areas of inquiry, the standard of review is plenary, as the Court is reviewing a question of law. *Town of McCandless v. McCandless Police Officers' Association*, 587 Pa. 525, 901 A.2d 991 (2006).

that dispute over the pay increase was of the type that the panel was authorized to consider. Taking into consideration the City's financial crisis did not render the ultimate issues decided by the panel outside of the general class of controversies that the panel was empowered to consider.

As the common pleas court astutely pointed out, there is a difference between the panel taking the PICA Act/Act 111 budgetary issues into consideration to resolve a collective bargaining dispute under Act 195, and the panel actually setting the City's budget. If the panel rewrote the City's budget based on the PICA Act/Act 111, such an act would constitute an act in excess of the panel's jurisdiction.

## II.

### *Did the Arbitration Panel Exceed its Powers When it Considered the PICA Act?*

■ Next, the Union contends that the common pleas court erred when it did not determine that the arbitrators' reliance on the PICA Act exceeded its "powers."

■ An arbitration panel exceeds its "powers" when "it mandates that the public employer carry out an illegal act ... that is, one that it could not have performed voluntarily ... or perform an action unrelated to a bargainable term or condition of employment." *Dept' of Corr. v. Pa. State Corr. Officers Ass'n*, 608 Pa. 521, 12 A.3d 346, 356 (2011) (internal citations omitted). Furthermore, as the Pennsylvania Supreme Court stated in *City of Washington v. Police Department of Washington*, 436 Pa. 168, 259 A.2d 437, 441–42 (1969), *superseded by statute on other grounds:*

Whether the decision maker in an adjudicatory process has been guilty of an excess in the exercise of power depends fundamentally on whether he has gone outside the boundaries of his authority. No adjudicatory body has unlimited discretion. At the very least, each and every adjudicator is bound by the Constitution of the United States; and most are bound by even tighter strictures ... In the instant case the adjudicatory power is an arbitration panel. Since it is a creature of the Legislature we must look to see if its powers were restricted in any way. If they were, and if the panel went beyond the limits of its authority, then it committed an excess in the exercise of power and the tainted portions of its mandate may be reviewed and corrected.

■ In contrast, mere errors of law will not support a finding that the arbitration panel exceeded its powers. *Pa. State Corr. Officers Ass'n*, 12 A.3d at 356. Errors of law include misinterpretations or a misapplication of law affecting a term or condition of employment. *City of Philadelphia v. FOP, Lodge No. 5*, 125 Pa. Cmwlth. 625, 558 A.2d 163, 164 (1989).

Here, the Union contends that by considering the City's budgetary restraints under the PICA Act, the arbitrators decided matters that were not subject to the right of collective bargaining in Act 195 interest arbitration.[5] This Court must disagree.

The arbitrators decided: (1) not to reinstate Step and Longevity increases retroactively; (2) to raise the pension contribution rates for current employees effective July 1, 2013; and (3) to remove holiday pay, sick pay and administrative leave as paid time for purposes of calculating when

---

5. The Union does not contend that the arbitrators mandated that the City carry out an illegal act.

overtime is due. All of these portions of the award challenged by the Union are unquestionably subjects of bargaining, directly arise out of the collective bargaining process, and are subjects on which the parties made proposals before the arbitrators. The Union's claim arises from its dissatisfaction with the arbitrators' weighing the concerns of both parties rather than any excess of power.

At most, this Court agrees with the common pleas court that there was an error of law which is unreviewable under the narrow certiorari scope of review.[6]

The order of the common pleas court is affirmed.

### ORDER

AND NOW, this 10th day of July, 2014, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.

---

6. As an aside, while the panel certainly was not *required* to consider PICA and economic constraints of the City because this was not an Act 111 Arbitration, this Court is not convinced that it was an error of law for the panel to consider the realities of the situation and the fact that the increases requested by the Union would challenge the City's financial viability.

While PICA *requires* an Act 111 arbitration panel to consider "the financial ability of the assisted city to pay the cost of such increase in wages or fringe benefits without adversely affecting levels of service," it does not *prohibit* an Act 195 arbitration panel from taking these same financial considerations into account when fashioning an award. The Union has provided no support which would obligate this Court to conclude that the panel here was actually *prohibited* from considering the City's budgetary constraints.